### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

DOE 1, DOE 2, and DOE 3, on behalf of themselves
and all others similarly situated,
c/o Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

       *Plaintiffs,*

    v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
131 M Street, NE Washington, DC 20507

and, ANDREA LUCAS, in her official capacity
as Acting Chair of the Equal Employment
Opportunity
Commission,
131 M Street, NE Washington, DC 20507

      *Defendants.*

Case No. 1: 25-cv-01124-RBW

### AMENDED CLASS ACTION COMPLAINT
### FOR DECLARATORY AND INJUNCTIVE RELIEF

    Plaintiffs Doe 1, Doe 2, and Doe 3, proceeding under pseudonyms, hereby sue Defendants

the Equal Employment Opportunity Commission and Andrea Lucas, Acting Chair of the

Employment Opportunity Commission, on behalf of themselves and all others similarly situated, and allege as follows:

## INTRODUCTION

1.    This case concerns a federal agency's disregard for carefully crafted statutory limitations on its investigative powers. Plaintiffs seek to enjoin the collection of sensitive personal information through an *ultra vires* investigation that Defendants, the Equal Employment Opportunity Commission ("EEOC" or the "Commission") and its Acting Chair Andrea Lucas, are conducting to intimidate and coerce members of the legal profession.

2.    The EEOC, which Congress created in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-4, is "central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). Until this year, the Commission recognized, along with the Supreme Court, that "Congress strongly encouraged employers … to act on a voluntary basis to modify employment practices and systems which constituted barriers to equal employment opportunity." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 515–16 (1986) (quoting 29 C.F.R. § 1608.1(b)).

3.    Defendant Lucas, apparently disagreeing with that long-settled understanding, has initiated an investigation of twenty law firms that had undertaken voluntary efforts to examine and mitigate barriers to equal opportunity in the legal industry. As part of a broad campaign by the Trump administration to investigate and intimidate law firms, single out individual lawyers and other perceived enemies, and undermine the independence of the legal profession, she has demanded the firms turn over sensitive personal information about their applicants and employees,

dating back six or even ten years. Yet Defendants have no statutory authority to carry out this investigation.

4.      Congress entrusted the Commission with the crucial task of investigating charges of discrimination filed by applicants and workers. But importantly, Congress carefully limited that investigative authority, providing that "the Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (quoting 110 Cong. Rec. 7214 (1964)); *see* 42 U.S.C. §§ 2000e-5(b), 2000e-8(a). To protect both companies' and workers' privacy, Congress imposed strict confidentiality requirements on those charges and investigations, as well as on efforts to obtain voluntary compliance. 42 U.S.C. §§ 2000e-5(b), 2000e-8(e). It also required the Commission to act through a quorum of three or more Commissioners, not a single agency head. 42 U.S.C. § 2000e-4(a).

5.      Defendants have failed to comply with any of these legal requirements. Their investigation is not based on a charge, as evidenced by the fact that Defendants publicly trumpeted these investigative letters. If Defendants were acting pursuant to a charge, they would be *criminally* liable for this type of disclosure. *See id.* § 2000e-5(b). And the Commission lacks a quorum to act.

6.      In addition to exceeding their authority under Title VII, Defendants have violated the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501 *et seq.* The PRA requires federal agencies to go through a public comment process and obtain approval from the Office of Management and Budget before "requir[ing] the disclosure" of or even "solicit[ing]" "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons." 44 U.S.C. §§ 3502(3)(A), 3506(c). The investigative letters, which pose virtually identical questions to the twenty firms, are plainly subject to the PRA, yet Defendants followed none of the required steps.

7.    Defendants have thus ignored Congress's mandates and grossly overstepped their authority. The investigative letters are *ultra vires*, and Defendants lack any authority to collect or maintain the data they seek.

8.    Plaintiffs are law students who have applied to or worked at one or more of the twenty law firms. The letters sent by Acting Chair Lucas demand sensitive personal information about Plaintiffs and their employment history: their name, sex, race, contact information, academic performance, and compensation. Plaintiffs expected that their personal information would be kept confidential to the firm at which they worked or to which they applied unless the firms were legally required to disclose it. Defendants have no legal authority to collect this data absent an ongoing charge investigation against the firms.  But now that Defendants have demanded it, Plaintiffs are deeply worried that their data will be divulged, and that they may be targeted as a result.

9.    Without judicial intervention, the institutions the administration has targeted may feel compelled to provide the requested information about Plaintiffs and their fellow employees and applicants. The administration's ongoing campaign of sanctioning law firms that it views as opposing its interests places enormous pressure on the firms to comply, for fear of drawing the administration's ire and retaliation. Indeed, it has been reported that the firms are planning to turn over the requested information regarding their employees and applicants. Thus, without an injunction, Plaintiffs' sensitive personal information and that of countless others may be disclosed to the government despite the government's lack of authority to obtain it.

10.    Further, the confidentiality obligations that would normally attach to lawful charge investigations and other forms of data collection by the EEOC and other federal agencies by their terms do not protect Plaintiffs' information. Though the Commission and its personnel are under strict non-disclosure requirements for charge investigations and authorized data collections,

enforceable through criminal prohibitions carrying up to a year in prison, *see* 42 U.S.C. §§ 2000e-5(b), 2000e-8(e), no such statutory proscriptions apply to the data they collect through this *ultra vires* effort. Indeed, Defendants have already made public the type of information that would subject them to criminal liability if they were acting pursuant to the statutory charge process. *See id.* § 2000e-5(b). Given the lack of constraints on disclosure, Plaintiffs therefore will be at immediate and constant risk of further dissemination of their personal information without an injunction.

11.     Accordingly, Plaintiffs request that the Court declare Defendants' unlawful investigation *ultra vires*, enjoin Defendants from taking any action to obtain employee information from the law firms without following statutory processes, and order Defendants to destroy any data that they have collected to date pursuant to the unlawful investigation.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are an agency of the United States and a Commissioner of that agency, and all are located in the District of Columbia.

## PARTIES

14.     Plaintiff Doe 1 is a current law student who applied to work at Goodwin Procter LLP; Hogan Lovells; Latham & Watkins LLP; Morgan Lewis & Bockius LLP; Morrison and Foerster LLP; Sidley Austin LLP; Simpson Thacher & Bartlett LLP; and Wilmer Cutler Pickering Hale and Dorr LLP for a 2024 summer associateship; and to Hogan Lovells; Latham & Watkins LLP; Sidley Austin LLP; Simpson Thacher & Bartlett LLP; and Wilmer Cutler Pickering Hale

and Dorr LLP for a 2025 summer associateship. They expected that their personally identifiable information would not be shared outside of the firms unless compelled by law.

15.    Plaintiff Doe 2 is a current law student who applied to work at Cooley LLP; Freshfields Bruckhaus Deringer LLP; Goodwin Procter LLP;  Latham & Watkins LLP; McDermott Will & Emery; Morrison and Foerster LLP; Milbank LLP; Morgan Lewis & Bockius LLP; Perkins Coie LLP; Ropes & Gray LLP; Simpson Thacher & Bartlett LLP; Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates; White & Case LLP; and Wilmer Cutler Pickering Hale and Dorr LLP for a 2024 summer associateship; and to Hogan Lovells; Morrison and Foerster LLP; and Latham & Watkins LLP for a 2025 summer associateship. They expected that their personally identifiable information would not be shared outside of the firm unless compelled by law.

16.    Plaintiff Doe 3 is a current law student who applied to work at Debevoise & Plimpton LLP; Ropes & Gray LLP; Simpson Thacher & Bartlett LLP; and Wilmer Cutler Pickering Hale and Dorr LLP for a 2025 summer associateship. They expected that their personally identifiable information would not be shared outside of the firm unless compelled by law.

17.    Defendant Equal Employment Opportunity Commission is an independent federal agency headquartered in Washington, D.C., at 131 M Street, NE Washington, DC 20507.

18.    Defendant Andrea Lucas is the Acting Chair of the Equal Employment Opportunity Commission. In 2020, Defendant Lucas was nominated by President Donald Trump and confirmed by the Senate to a five-year term ending July 1, 2025. President Trump appointed her as Acting Chair on January 21, 2025. On March 25, 2025, President Trump renominated her to a second term. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

19.     On March 6, 2025, President Trump issued Executive Order No. 14230, *Addressing Risks from Perkins Coie LLP*, 90 Fed Reg. 11781 (March 6, 2025), attached as Exhibit A. Section 4(a) of the Executive Order directs the Chair of the EEOC to review the hiring practices of law firms for their compliance with Title VII: "The Chair of the Equal Employment Opportunity Commission shall review the practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964, including whether large law firms: reserve certain positions, such as summer associate spots, for individuals of preferred races; promote individuals on a discriminatory basis; permit client access on a discriminatory basis; or provide access to events, trainings, or travel on a discriminatory basis." Exhibit A at § 4(a).

20.     Section 4(b) of Executive Order 14230 directs "[t]he Attorney General, in coordination with the Chair of the Equal Employment Opportunity Commission and in consultation with State Attorneys General as appropriate, [to] investigate the practices of large law firms as described in subsection (a) of this section who do business with Federal entities for compliance with race-based and sex-based non-discrimination laws and take any additional actions the Attorney General deems appropriate in light of the evidence uncovered." Exhibit A at § 4(b).

21.     On March 17, 2025, less than two weeks after the issuance of Executive Order No. 14230, the EEOC issued a press release entitled "EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices." Press Release, U.S. Equal Emp. Opportunity Comm'n, EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices, https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei [https://perma.cc/C5WD-JMXJ] (Mar. 17, 2025), attached as Exhibit B (hereinafter "EEOC Press Release re: Letters to Law Firms"). The press release states

that "[b]ased on publicly available information, the letters note concerns that some firms' employment practices, including those labeled or framed as DEI, may entail unlawful disparate treatment in terms, conditions, and privileges of employment, or unlawful limiting, segregating, and classifying based on race, sex, or other protected characteristics, in violation of Title VII of the Civil Rights Act of 1964 (Title VII)." *Id.* The press release contains the following quote from Defendant Lucas: "The EEOC is prepared to root out discrimination anywhere it may rear its head, including in our nation's elite law firms. No one is above the law—and certainly not the private bar." The press release contains a link to the twenty letters to the law firms. *See* Exhibit B, EEOC Press Release re: Letters to Law Firms; Letters from Andrea R. Lucas, Acting Chair, U.S. Equal Emp. Opportunity Comm'n, to Partners at Twenty Law Firms (Mar. 17, 2025), https://www.eeoc. gov/sites/default/files/2025-03/Law_Firm_Letters_-_03.17.2025.pdf    [https://perma.cc/3A3S-HF79], attached collectively as Exhibit C.

22.    Neither the press release nor the letters provide any indication that the letters were sent pursuant to a charge made by an aggrieved person or somebody acting on their behalf or by a Commissioner or that the law firms were provided with a notice of charge consistent with Title VII or the accompanying EEOC regulations.

23.    The twenty law firms identified as recipients of the letters are, in order of appearance in Exhibit C: Perkins Coie LLP; Cooley LLP; Reed Smith LLP; A&O Shearman; Debevoise & Plimpton LLP; Freshfields Bruckhaus Deringer LLP; Goodwin Procter LLP; Hogan Lovells LLP; Kirkland & Ellis LLP; Latham & Watkins LLP;  McDermott Will & Emery; Milbank LLP; Morgan Lewis and Bockius LLP; Morrison and Foerster LLP; Ropes and Gray; Sidley and Austin; Simpson, Thacher and Bartlett LLP; Skadden, Arps, Slate, Meagher & Flom; White and Case LLP; and Wilmer Cutler Pickering Hale and Dorr LLP.

24.      The letters are substantially similar. Seventeen of the twenty letters are identical except for the name of the firm and related individualized information such as the name, title, and address information of the recipient of the letter. Acting Chair Lucas begins each letter by stating: "Based on public statements and court filings by [law firm], I am seeking information about the firm's employment practices." [footnote omitted]

25.      For Perkins Coie LLP, Cooley LLP. and Reed Smith LLP, the letters provide firm-specific information about the basis for their inclusion in the investigation. For the other seventeen firms, the only specific information identified for their inclusion in the investigation is that they recently participated in the Sponsors for Educational Opportunity Law's SEO Law Fellowship, a "0L" summer fellowship for students planning to start law school in the fall following the fellowship.

26.      Each letter also contains a general statement indicating why Acting Chair Lucas is concerned about the firm's practices and what she is requesting of them: "I am concerned that [the firm's] 'diversity and inclusion' or other employment programs, policies, and practices may entail unlawful disparate treatment in terms, conditions, and privileges of employment, or unlawful limiting, segregating, and classifying based—in whole or in part—on race, sex, or other protected characteristics, in violation of Title VII. I believe you can be of assistance in helping to identify all relevant information I might consider. As an initial request, please provide responses to the questions outlined below. Please also preserve all relevant records."

27.      The letters then proceed to thirty-seven requests for information, not including subparts, that are divided into six categories: (1) Internships, Fellowships, and Scholarships; (2) Other Hiring and Compensation Practices; (3) Other Terms, Conditions, and Privileges of Employment; (4) Data Disclosures, Staffing Decisions, and Other Actions Taken In Response to

Client Reports; (5) Other Policies and Processes Incentivizing Decisions Motivated by Protected Characteristics; and (6) Partnership Decisions. The information requested in those thirty-seven requests is essentially identical. For the letter directed at Cooley LLP, there is one additional category, with four additional requests, relating to Reduction in Force, and so the numbering of the requests in that letter is slightly different.

28.    Several of the requests ask the firms to provide personally identifiable information about people employed by the firm as lawyers or law students or who had applied for positions.

29.    Request Number 6 asks for the following information:

From 2019 to the present, in a searchable Excel spreadsheet, please provide the following respective sets of data for applicants to the 1L Diversity Fellowship Program:

a.  Name
b.  Sex
c.  Race
d.  Phone number
e.  Email address
f.  Law school
g.  Law school GPA (as of date of application)
h.  Selected for 1L Diversity Fellowship Program (Y/N)

*If selected*:
i.  Compensation for 1L Diversity Fellowship Program
j.  Received offer for 2L Diversity Fellowship Program (Y/N)
k.  Received offer for regular summer associate position (Y/N)
l.  Received offer for full-time associate attorney position (Y/N)
m.  Received any additional funds related to, or following, participation in a Diversity Fellowship Program (Y/N)
n.  Amount of additional funds
o.  Reason for receipt of additional funds
p.  Office location

30.    Request Number 7 asks for the following information:

From 2015 to the present, in a searchable Excel spreadsheet, please provide the following respective sets of data for applicants to the 2L Diversity Fellowship Program(s):

a. Name
b. Sex
c. Race
d. Phone number
e. Email address
f. Law school
g. Law school GPA (as of date of application)
h. Selected for 2L Diversity Fellowship Program (Y/N)
i. Name of 2L Diversity Fellowship Program

*If selected*:
j. Compensation for 2L Diversity Fellowship Program
k. Received offer for regular summer associate position (Y/N)
l. Received offer for full-time associate attorney position (Y/N)
m. Received any additional funds related to, or following, participation in a Diversity Fellowship Program (Y/N)
n. Amount of additional funds
o. Reason for receipt of additional funds
p. Office location

31.    Request Number 15 asks for the following information:

For each year in which SEO Fellows were placed at your firm, provide the following information about all SEO Fellows placed at your firm:

a. Name
b. Sex
c. Race
d. Phone number
e. Email address
f. Office location

g. Total compensation paid to SEO Fellow for internship at your firm
h. Applied for 1L summer associate program (Y/N)
i. Selected for 1L summer associate program (Y/N)
j. Applied for 2L summer associate program (Y/N)
k. Selected for 2L summer associate program (Y/N)
l. Applied for full-time associate attorney position (Y/N)
m. Selected for full-time associate attorney position (Y/N)

32.    Request Number 22 asks for the following information:

11

In a searchable Excel spreadsheet, fully identify all law students or attorneys who applied to be hired by the firm (including as a regular summer associate, associate attorney, of counsel, or partner) since 2019.   A complete response to this answer will include the applicant's:

a.  Name
b.  Sex
c.  Race
d.  Phone number
e.  Email address
f.  Law school
g.  Law school GPA (as of date of application)
h.  Hired (Y/N)

*If hired*:
i.  Date hired
j.  Date discharged (indicating voluntary or involuntary)
k.  Starting compensation
l.  Compensation as of the date of response
m.  Tuition repayment assistance
n.  Title
o.  Date of promotion
p.  Office location

33.    Request Number 23 in each letter, except for the letter to Cooley LLP where it is Request Number 27, asks for the following information about candidates considered or selected for access to the Leadership Council on Legal Diversity "Pathfinders Program" or "Fellows Program":

Information on all candidates that your firm considered selecting to receive access to these programs:

   i.    Name
  ii.    Sex
 iii.    Race
 iv.    Phone number
  v.    Email address
 vi.    Office location
 vii.    Year that candidate was considered for LCLD program
viii.    Selected by your firm to participate in LCLD program (Y/N)
 ix.    Job position at time of consideration for LCLD program
  x.    Current job position
 xi.    Whether, at the time of consideration for LCLD program, candidate held a leadership position at your firm (Y/N)
 xii.    Whether individual currently holds a leadership position at your firm (Y/N)

34.    Request Number 36 in each letter, except for the letter to Cooley LLP where it is

Request Number 40, asks for the following information:

For each year since 2019, please provide the following data for lawyers in your firm who were considered for elevation for partner:

a.  Name
b.  Sex
c.  Race
d.  Phone number
e.  Email address
f.  Office location
g.  Member of firm affinity group (Y/N)
h.  Name of affinity group(s) in which attorney participates
i.  Previously participated in LCLD program (Y/N)
j.  Previously was SEO Fellow (Y/N)
k.  Previously participated in firm diversity internship or fellowship (Y/N)
l.  Elevated to partner (Y/N)
m.  Equity or non-equity partner (Equity / Non-Equity)

35.    Request Number 37 in each letter, except for the letter to Cooley LLP where it is

Request Number 41, asks for the following information:

For each year since 2019, please provide the following data for lawyers in your firm who applied or were recruited as potential lateral partners:

a. Name
b. Sex
c. Race
d. Phone number
e. Email address
f. Office location
g. Member of a firm affinity group (Y/N)
h. Name of affinity group(s) in which attorney participates / participated
i. Previously participated in LCLD program (Y/N)
j. Previously was SEO Fellow (Y/N)
k. Previously participated in a firm diversity internship or fellowship (Y/N)
l. Hired as lateral partner (Y/N)
m. Equity or non-equity partner (Equity / Non-Equity)

36.    Request Number 26 of the letter to Cooley LLP requests the following information:

a. Name
b. Sex
c. Race
d. Date of Birth
e. Phone number
f. Email address
g. Date hired
h. Hours billed for each year 2019, 2020, 2021, and 2022
i. Date hired
j. Title
k. Affinity group membership
l. Practice group
m. Office location

37.    The second to last paragraph of each letter states: "Please submit your responses and any supporting documentation by **April 15, 2025**, to lawfirmDEI@eeoc.gov. If certain information is unavailable or requires additional time to compile, please indicate this in your response and provide an estimated timeline for submission." (emphasis in original)

38.     On March 18, 2025, four former EEOC Commissioners, two former EEOC Generals Counsel, and one former Legal Counsel sent a public letter to Acting Chair Lucas. Letter from Former EEOC Employees, U.S. Equal Emp. Opportunity Comm'n, to Andrea Lucas, Acting Chair, U.S. Equal Emp. Opportunity Comm'n (Mar. 18, 2025), https://www.chaifeldblum.com/wp-content/uploads/2025/03/Letter-to-Acting-Chair-Lucas-March-18-2025.pdf [https://perma.cc/22KS-879F], attached as Exhibit D. The former EEOC officials requested that she "withdraw the 20 letters that [she] issued to law firms on March 17, 2025." Among the reasons offered for the withdrawal request was that "the EEOC has no authority to require information from employers under Title VII simply by the request of a Commissioner," "Title VII does not authorize the sort of public demand for information encompassed in [the] letters to these law firms," that in an investigation authorized by law "[she] would not have been permitted to reveal the existence, target, or subject of [her] charge without violating Title VII's civil and criminal confidentiality provision," and that "[t]he detailed information requests contained in [her] letters also raise significant questions under the Paperwork Reduction Act (PRA)." Exhibit D.

39.     The President's order directing the EEOC to investigate the employment practices of the law firms is part of a broader attack by this administration on law firms, certain of their current or former lawyers, and the wider legal profession. Most of Executive Order No. 14230 is directed specifically at Perkins Coie. It seeks to penalize the firm by ordering federal agency heads to take steps to suspend security clearances of firm attorneys, deny the firm's attorneys access to government buildings, terminate communication between federal employees and the firm, and cancel government contracts with the firm or those who have contractual agreements with the firm. Other Executive Orders are directed to a specific firm and order similar sanctions to those firms as Executive Order No. 14230 does with Perkins Coie. Exec. Order No. 14237, *Addressing Risks*

*From Paul Weiss*, 90 Fed. Reg. 13039 (Mar. 14, 2025); Exec. Order No. 14246, *Addressing Risks*

*From Jenner & Block*, 90 Fed. Reg. 13997 (Mar. 25, 2025); Exec Order No. 14250, *Addressing*

*Risks from Wilmer Hale*, 90 Fed. Reg. 14549 (Mar. 27, 2025); Exec. Order, *Addressing Risks from*

*Susman Godfrey*, The White House (Apr. 9, 2025), https://www.whitehouse.gov/presidential-

actions/2025/04/addressing-risks-from-susman-godfrey [https://perma.cc/J2S4-9QE5] .

40.    Some firms have responded to the attacks on them by filing lawsuits challenging

the executive orders against them. *Perkins Coie LLP v. U.S. Dept. of Justice*, No. 1:25-cv-00716-

BAH (D.D.C Mar. 12, 2025), ECF No. 21  (Order granting Temporary Restraining Order); *Jenner*

*& Block LLP v. U.S. Dept. of Justice*, No. 1:25-cv-00916-JDB (D.D.C Mar. 28, 2025), ECF No. 9

(Order granting Temporary Restraining Order); *Wilmer Cutler Pickering Hale and Dorr LLP v.*

*Executive Office of the President,* No. 1:25-cv-00917-RJL (D.D.C Mar. 28, 2025), ECF No. 10

(Memorandum Order granting Temporary Restraining Order in part); *Susman Godfrey LLP v.*

*Executive Office of the President*, No. 1:25-cv-01107 (D.D.C. Apr. 11, 2025), ECF No. 1

(Complaint). Others have reached agreements with the President in which they, among other

things, pledged to provide between 40 and 125 million dollars' worth of pro bono support on

particular causes favored by the President and committed "to merit-based hiring, promotion, and

retention, instead of 'diversity, equity, and inclusion' policies." Exec. Order No. 14244,

*Addressing Remedial Action of Paul Weiss*, 90 Fed. Reg. 13685 (Mar. 21, 2025).

41.    Five firms targeted by the investigation letters have reached agreements. On March

28, 2025, Skadden reached an agreement with the President. *See* Kathryn Rubino, *Skadden Makes*

*$100 Million 'Settlement' With Trump in Pro Bono Payola*, Above the Law (Mar. 28, 2025),

https://abovethelaw.com/2025/03/skadden-makes-100-million-settlement-with-trump-in-pro-

bono-payola/. Skadden Arps agreed to provide $100 million worth of pro bono support on

particular causes favored by the President and committed "[to] engage independent outside counsel to advise the Firm to ensure employment practices are fully compliant with law, including, but not limited to, anti-discrimination laws." *Id.*

42.     On April 11, 2025, Kirkland & Ellis, Latham & Watkins, A&O Shearman, and Simpson Thacher & Bartlett followed suit, according to the President. Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 11, 2025, 12:21 PM), https://truthsocial.com/ @realDonaldTrump/posts/114320245355397433    [https://perma.cc/9QLE-NFAN].    President Trump stated that those firms agreed to provide 125 million dollars in support of causes favored by the President. *Id.* He also stated that "[c]oncurrent with these agreements, the EEOC has withdrawn the March 17, 2025 letters to the Law Firms, and will not pursue any claims related to those issues."

43.     Following the President's April 11 announcement, the EEOC issued a press release regarding the four firms entitled, "In EEOC Settlement, Four 'BigLaw' Firms Disavow DEI and Affirm Their Commitment to Merit-Based Employment Practices." Press Release, U.S. Equal Emp. Opportunity Comm'n, In EEOC Settlement, Four 'BigLaw' Firms Disavow DEI and Affirm Their Commitment to Merit-Based Employment Practices (Apr. 11, 2025), https://www.eeoc.gov/ newsroom/eeoc-settlement-four-biglaw-firms-disavow-dei-and-affirm-their-commitment-merit-based [https://perma.cc/N5FF-P2G3], attached as Exhibit E. The press release stated that "[t]he firms chose to voluntarily resolve matters with the EEOC, without admission of liability, to avoid an extended dispute." *Id*. Neither the President nor the EEOC indicated whether any of the five firms who received letters and reached settlements has provided any information to the EEOC.

44.     The announcements from President Trump and the EEOC on April 11 leave no doubt that the EEOC is following the lead of the President in its investigations of the firms as opposed to following the Congressionally mandated process.

45.     It has been reported that the firms intend to respond to the letters, including employee- and applicant-specific information: "The firms plan to respond by the April 15 deadline in the letters, in which the EEOC also requested details about hiring and promotions, job applicants, and individual attorneys, the people said. They've decided not to challenge Andrea Lucas, the EEOC's Trump-appointed acting leader, despite questions about her authority to investigate firms via public letters. Those on the EEOC list determined that ignoring the letters or refusing to turn over any information could get them more unwanted attention from the administration, according to the people." Chris Opfer & Tatyana Monnay, *Law Firms Balk at Trump Push for Client Data in DEI Probes*, Bloomberg Law (Apr. 10, 2025), https://news.bloomberglaw.com/business-and-practice/law-firms-balk-at-trump-push-for-client-data-in-diversity-probe [https://perma.cc/NY9Z-UX76].

## LEGAL BACKGROUND

### A. The Equal Employment Opportunity Commission

46.     The Civil Rights Act of 1964 is one of the most sweeping pieces of civil rights legislation enacted in our Nation's history. A core component of the Civil Rights Act is Title VII, which is the seminal federal law that bans discrimination on the basis of race, color, religion, sex, or national origin in employment. 42 U.S.C. §§ 2000e *et seq*.

47.     In Section 705 of Title VII, 42 U.S.C. § 2000e-4, Congress created the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e-4(a) states that the Commission is a bipartisan, five-member entity, each of whose members is appointed for a five-year term by the

President with the advice and consent of Congress. Congress staggered the terms so one member's term would end each year. *Id.* The President designates one of the Commissioners as the Chair and the "Chairman shall be responsible on behalf of the Commission for the administrative operations of the Commission." *Id.*

48.     Congress specified that the Commission requires a quorum of three members. 42 U.S.C. § 2000e-4(c). Since President Trump removed Commissioners Jocelyn Samuels and Charlotte Burrows on January 27, 2025, the Commission has had only two Commissioners and therefore has lacked a quorum.

49.     Like all agencies, the EEOC "has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374 (1986).

50.     As the Supreme Court has explained, Congress provided the EEOC with intentionally limited authority to investigate employers. "[T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) (quoting 42 U.S.C. § 2000e–8(a)). The drafters of Title VII specifically provided that "the Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing." *Id.* (quoting 110 Cong. Rec. 7214 (1964)).

51.     Section 706(b) of Title VII, 42 U.S.C. § 2000e-5(b), sets forth how such a charge investigation is conducted. It begins with the filing of a charge "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer…has engaged in an unlawful employment practice." *Id.* The Commission then "shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful

employment practice)" on the employer within ten days of receipt of the charge and then "shall make an investigation" of the charge. *Id.* The statute also requires that "charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." *Id.*

52.    In addition, the Commission is required to keep the existence of a charge confidential: "Charges shall not be made public by the Commission." *Id.* Nor may the EEOC make public any part of "informal methods of conference, conciliation, and persuasion" attempting to eliminate an unlawful employment practice at issue in a charge. *Id.* Violating either prohibition carries criminal penalties: "Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both." *Id.*

53.    As authorized by Congress in Section 706(b), the EEOC has also adopted regulations and accompanying forms specific to the charge process. There is a charge form, *Charge of Discrimination*, U.S. Equal Emp. Opportunity Comm'n (2022), https://www.eeoc.gov/sites/ default/files/migrated_files/eeoc/foia/forms/form_5.pdf [https://perma.cc/7XUL-F9C7], and the person making the charge, including a Commissioner, must make the charge in writing, sign and verify it. 29 C.F.R. §§ 1601.07-11. The regulations also set forth the procedure for providing notice of the charge within ten days after the charge is filed. The notice shall include the charge, "except when it is determined that providing the charge would impede the law enforcement functions of the Commission." 29 C.F.R. § 1601.14(a). The EEOC has included a notice of charge form on its website. *Notice of Charge of Discrimination*, U.S. Equal Emp. Opportunity Comm'n (2009), https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_131.pdf [https://perma.cc/T6ZD-VHMX].

54.    There is also a webpage on the EEOC's website setting forth the process for Commissioner charges. *Commissioner Charges*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/commissioner-charges [https://perma.cc/7XJR-98ZF] (last visited Apr. 14, 2025). Regarding charges that arise from a Commissioner's own initiative, the EEOC webpage states, "Commissioner charges that arise from a Commissioner's own initiative are typically reviewed by the Office of Field Programs (OFP) and subsequently signed by that Commissioner. OFP then assigns the signed charge to an appropriate field office to investigate." *Id.* Commissioner's charges are subject to the same procedures and confidentiality rules as other charges. *See, e.g.*, 42 U.S.C. § 2000e-5(b).

55.    In addition to charge investigations, Congress provided that under Section 709(c), the EEOC can "prescribe by regulation or order, after public hearing," reports that employers must make based on "records relevant to the determination whether unlawful employment practices have been or are being committed."

56.    The only data collection report that the Commission has created for private employers under Section 709(c) is the EEO-1 Employer Information Report, which applies to private employers with more than 100 employees. 29 C.F.R. § 1602.07. That report includes aggregated data by race and ethnicity for male and female employees under various occupational categories. It does not include personally identifiable information of employees. *Equal Employment Opportunity – Employer Information Report EEO-1*, U.S. Equal Emp. Opportunity Comm'n (2008), https://www.eeoc.gov/sites/default/files/migrated_files/employers/eeo1survey/ https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_5.pdf eeo1-2-2.pdf [https://perma.cc/X4B3-WQ3K].

57.     Section 709 provides that any information that the Commission obtains through a charge investigation or data collection report process is subject to a strict prohibition on disclosure, accompanied by criminal penalties of up to $1,000 and a year in prison. 42 U.S.C. § 2000e-8(e). Similarly, the statute provides that "[c]harges shall not be made public by the Commission" and that "[a]ny person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both." 42 U.S.C. § 2000e-5(b).

58.     The investigative letters to the law firms do not comply with the requirements of Title VII. As stated above, the EEOC can only commence an investigation of an employer after a formal charge is made under oath or affirmation by an aggrieved party, somebody acting on behalf of an aggrieved party, or a Commissioner. The EEOC must then provide notice of the charge to the employer. And EEOC personnel must keep the investigation confidential and are subject to criminal penalties if they do not. Here, the letters do not mention that a charge was filed, do not indicate that the EEOC is providing the law firms with notice of a charge, and were made public by the EEOC.

59.     Similarly, the letters do not comply with the requirements of a data collection report. They were not "prescribe[d] by regulation or order, after public hearing," as required by 42 U.S.C. § 2000e-8(c).  Without a quorum since January 28, 2025, the EEOC does not have the authority to hold public hearings or issue regulations or orders.

### B.     The Paperwork Reduction Act

60.     The Paperwork Reduction Act applies to an agency's "collection of information" calling for "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons." 44 U.S.C. § 3502(3)(A)(i). Before seeking such a collection of information, the agency has to both go through a public comment process and an

approval process from the Office of Management and Budget. 44 U.S.C. § 3506. The Paperwork Reduction Act applies not only to collections that "requir[e] the disclosure" of information but any other action "obtaining, causing to be obtained, [or] soliciting" of such information, "regardless of form or format," *id.* § 3502(3)(A), with exceptions not relevant here, *id.* § 3518(c)(1).

61.     The statute sets out protections for respondents if the collection of information is improper. It states that "no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if — (1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a). It further provides that "[t]he protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto." 44 U.S.C. § 3512(b).

62.     Because the letters "solicit … answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," they are subject to the Paperwork Reduction Act. 44 U.S.C. § 3502(3)(A)(i). Yet the EEOC did not undertake a public comment process or, on information and belief, obtain approval from the Office of Management and Budget. Nor do the request letters display a valid control number, as required by the Paperwork Reduction Act.

**CLASS ACTION ALLEGATIONS**

63.     Plaintiffs (the "Proposed Class Representatives") bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and all other persons similarly situated.

64.     Plaintiffs seek to represent the following class: All individuals whose names and other personal information are requested in EEOC's investigative letters (the "Proposed Class").

65.     The Proposed Class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Each of the 20 law firms employs hundreds or thousands of attorneys and receives hundreds or thousands of applications per year. Because the investigative letters demand data covering a six- or even ten-year period, many thousands of persons fall within the Proposed Class.

66.     The Proposed Class's claims turn on common questions of fact or law that are capable of classwide resolution. *See* Fed. R. Civ. P. 23(a)(2). The legality of EEOC sending investigative letters to 20 employers without complying with Title VII or the Paperwork Reduction Act is a common question capable of resolution in one stroke.

67.     The Proposed Class Representatives' claims are typical of the claims of the Proposed Class. *See* Fed. R. Civ. P. 23(a)(3). Each class member's claim arises from the same course of events (the EEOC's *ultra vires* investigation) and each class member will experience the same injury (the unlawful collection and retention of their personal information) if relief is denied.

68.    The Proposed Class Representatives will fairly and adequately represent the Proposed Class. *See* Fed. R. Civ. P. 23(a)(4). The Proposed Class Representatives are committed to seeking a declaration and injunction that will benefit all members of the Proposed Class equally, protecting each one from the unlawful collection and retention of their personal information. They are aware of their obligations as Proposed Class Representatives and willing to dedicate time and effort to pursuing the interests of the Proposed Class.

69.    The Proposed Class Representatives are represented by counsel with extensive experience in civil rights law, administrative law, and class actions, who are committed to zealously representing the Proposed Class. *See* Fed. R. Civ. P. 23(a)(4), 23(g).

70.    Defendants have acted or refused to act on grounds that apply generally to the Proposed Class, exceeding their authority under Title VII and ignoring their obligations under the Paperwork Reduction Act in the same way as to all class members and subjecting all class members to the same unlawful collection and retention of personal information. Final injunctive relief and corresponding declaratory relief is therefore appropriate with respect to the Proposed Class as a whole. *See* Fed. R. Civ. P. 23(b)(2)

### HARM SUFFERED BY PLAINTIFFS AND THE PROPOSED CLASS

71.    If the EEOC investigation is allowed to proceed, Plaintiffs' sensitive personal information and that of the Proposed Class may be disclosed to the government despite the government's complete lack of authority to obtain it. Each of these individuals and entities will be irreparably harmed. The investigative letters demand personally identifying information and

sensitive details about individuals' academic record, compensation, and employment history. Among other things, they request each individual's name, sex, race, phone number, email address, law school, law school GPA, compensation, and participation in affinity groups, along with details about their hiring, promotion, equity status, and/or discharge, including whether any discharge was voluntary or involuntary.

72.    This personal information includes sensitive, private details in which Plaintiffs and the other members of the Proposed Class have a reasonable expectation of privacy. An individual's sex, race, contact information, academic performance, compensation, and reasons for separating from a job are private matters. It is reasonable to expect that an employer will keep such information confidential unless required by law to provide it. Once this personal information has been compromised, the bell of disclosure cannot be unrung. Plaintiffs' and the other Proposed Class Members' expectation of privacy would be irretrievably lost. In light of the EEOC's demands, Plaintiffs now have significant concerns that their data will be disclosed by the firms that retain it, and that the government may use their data improperly to target them or their families for any activity or speech it wishes to stifle.

73.    The federal government itself recognizes that much of this information constitutes sensitive or confidential personally identifiable information. For example, in its instructions to employers responding to formal charge investigations, the EEOC identifies "personal phone numbers" and "personal email addresses" as confidential information that should be segregated to minimize unnecessary disclosure. *Questions and Answers for Respondents on EEOC's Position Statement Procedures*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/employers/ questions-and-answers-respondents-eeocs-position-statement-procedures [https://perma.cc/5XKE -8R2F] (last visited Apr. 14, 2025). The National Archives and Records Administration, which

oversees agencies' management of unclassified information, has recognized that "[e]thnic or religious affiliation" is sensitive personally identifiable information, whose "disclos[ure] without authorization could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual." National Archives and Records Administration, *CUI Category: Personally Identifiable Information*, National Archives and Records Administration, https://www.archives.gov/cui/registry/category-detail/sensitive-personally-identifiable-info [https://perma.cc/DQN9-TY7Z] (last visited Apr. 14, 2025). It likewise recognizes that information about employees' performance or contact information may be similarly sensitive. *Id.*

74.    The personally identifiable information the EEOC has demanded vastly exceeds what it collects through any means other than charge investigations. For example, the data collection reports that the EEOC undertakes pursuant to 42 U.S.C. § 2000e-8(c) require employers to provide data about sex, race, and ethnicity aggregated by job categories. They do not require employers to provide any data about individuals. The *only* means by which EEOC collects such individualized data is through charge investigations.

75.    Charge investigations and data collection reports are subject to a strict confidentiality requirement: "[A]ny officer or employee of the Commission" who "make[s] public in any manner whatever any information obtained by the Commission pursuant to its authority under [42 U.S.C. § 2000e-8]" is guilty of a misdemeanor violation carrying a penalty of up to $1,000 and one year in prison. 42 U.S.C. § 2000e-8(e).

76.    By contrast, the *ultra vires* investigative letters are not accompanied by any confidentiality obligation. Neither the letters themselves nor the press release accompanying them makes any mention of the confidential nature of the data that they request, nor states that EEOC will keep responses confidential—much less identifies any statutory obligation to do so. Tellingly,

the press release says that any information provided by "whistleblowers" about the firms will be kept confidential but makes no similar guarantee about the information that the firms themselves provide.

77.     Indeed, the very fact that Defendant Lucas publicized the investigative letters shows that Defendants do not view the statutory confidentiality obligations as applicable. If they were subject to the confidentiality obligations applicable when a charge has been filed alleging an unlawful employment practice, they would be prohibited from making public any efforts at "conference, conciliation, and persuasion," upon criminal penalty. 42 U.S.C. § 2000e-5(b).

78.     Nor can Plaintiffs and the other Proposed Class members rely on the Privacy Act to ensure that EEOC will keep their information confidential. The Privacy Act only governs information stored in a "system of records," defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5); *see also id.* § 552a(b) (setting conditions on disclosure of "any record which is contained in a system of records"). The EEOC's collection of data from the law firms is organized by firm, not by individual, and thus appears to fall outside the Privacy Act's protections. Similarly, this collection does not fall within any of the EEOC's published systems of records, *see* Privacy Act of 1974; Publication of Notices of Systems of Records and Proposed New Systems of Records, 81 Fed. Reg. 81116 (Nov. 17, 2016) (listing EEOC's systems of records), and thus the EEOC's sharing of this information does not seem to be governed by any of the restrictions it has acknowledged for those systems.

79.     As discussed above, the law firms may feel compelled to provide Plaintiffs' and the other Proposed Class members' personal information to the EEOC. If a firm does not comply, it

risks significant retaliation by the administration. The Executive Orders described above illustrate the sanctions that may be levied against a firm that does not comply with the request. Accordingly, without an injunction, Plaintiffs' and the other Proposed Class members' reasonable expectation of privacy will likely be destroyed, as the EEOC may obtain their personal information unlawfully without being subject to any apparent confidentiality obligations.

80.     As a result, Plaintiffs fear retribution for themselves and their families. They have significant concerns about participating in any programs that might at some future date fall into disfavor with the current administration, including any diversity, equity, or inclusion programs, fellowships, or opportunities. The government has demonstrated its willingness to target people and institutions with whom it disagrees politically, chilling the people who populate those institutions from doing anything that might subject their organization, and by extension themselves, to the antipathy of the government. Being personally identified in connection with a program disfavored by the federal government would likely harm Plaintiffs' employment prospects, not only at the named firms, but at any firm that fears being named going forward.

## CLAIM FOR RELIEF

### Count One
### (*Ultra Vires* Action)

81.     Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

82.     In sending the letters, Defendants have engaged in an *ultra vires* action.

83.     Defendants are attempting to collect Plaintiffs' personal information as part of an *ultra vires* investigation. The investigation letters are part of an effort to obtain information from the firms in order to determine whether they have violated Title VII. Defendants have sent out these investigation letters contrary to and in excess of the exclusive investigative process set forth

in Title VII. The express language of 42 U.S.C. §§ 2000e-5 and 2000e-8, the legislative history, Supreme Court precedent, and EEOC regulations mandate that the EEOC cannot start an investigation unless and until a charge has been filed with the agency.

84.    Defendants' actions indicate that there was no pending charge filed against any of the firms related to the investigation at the time Defendants sent the letters. Neither the press release related to the letters, nor the letters themselves, reference EEOC charges, and there were no required forms or notices attached to the letters. Initiating an investigation in the absence of an EEOC charge violates Title VII and the accompanying regulations. Moreover, Defendant Lucas is seeking to conduct these investigations of the law firms publicly, which would be in violation of the enforcement provision of Title VII if EEOC charges had been filed, which not only provides that investigations be kept confidential but contains criminal penalties for any person who breaches confidentiality.

85.    The EEOC lacked a quorum at all relevant times, and therefore would have lacked any power to act even if the statute authorized this type of investigation. In addition, the EEOC could not have obtained the information through the data collection report process, which requires a public hearing and a regulation or order.

86.    Though there is no private right of action for violation of the Paperwork Reduction Act, Defendants violation of the statute amplifies the illegality of their actions. The letters constitute a "collection of information" involving "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons." 44 U.S.C. § 3502(3)(A)(i). Defendants did not subject the letters through the required public comment process and approval process from the Office of Management and Budget. 44 U.S.C. § 3506. Moreover, the letters do not display a valid control number assigned by the Director of the Office of

Management and Budget and to not inform the recipients that they are not required to respond to the collection of information unless it displays a valid control number as required by 44 U.S.C. § 3512(a).

87.     Plaintiffs are suffering irreparable harm in that the investigative letters demand personal identifying information and sensitive details about individuals' academic record, compensation, and employment history without the legal protections this data would be afforded if collected pursuant to a charge. Among other things, they request each individual's name, sex, race, phone number, email address, law school, law school GPA, and compensation. This personal information includes sensitive, private details in which Plaintiffs have a reasonable expectation of privacy. An individual's sex, race, contact information, academic performance, and compensation are private matters. It is reasonable to expect that an employer will keep them confidential unless required by law to provide them. Accordingly, without an injunction, Plaintiffs' reasonable expectation of privacy will be violated. In contrast, Defendants have no legitimate interest in obtaining information as part of an illegal investigation and the public interest is served in not permitting the government to obtain information through an investigation that is outside the EEOC's authority under Title VII of the Civil Rights Act and violates the Paperwork Reduction Act.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.  Declare that Defendants Acting Chair Andrea Lucas and the Equal Employment Opportunity Commission acted *ultra vires* in excess of their authority under Title VII of the Civil Rights Act of 1964 by sending investigative letters to twenty law firms on

March 17, 2025, without a properly filed EEOC charge and by making their investigations public;

2. Enjoin Defendants Equal Employment Opportunity Commission and Acting Chair Andrea Lucas from investigating any law firm through means that do not satisfy the requirements of conducting an investigation under Title VII's EEOC charge process;

3. Order Defendants Equal Employment Opportunity Commission and Acting Chair Andrea Lucas to withdraw the investigative letters that included requests for information of the law firms dated March 17, 2025;

4. Order Defendants to return any information already collected pursuant to the investigative letters to the law firms and delete the information from its databases; and

5. Grant any other relief this Court deems appropriate.

May 16, 2025                                    Respectfully submitted,

  _/s/   Jennifer Fountain Connolly    ._

Jennifer Fountain Connolly (DC Bar No. 1019148)

Sarah Goetz (DC Bar No. 1645309)

Audrey Wiggins*

Orlando Economos (DC Bar No. 90013791)

Sunu P. Chandy (DC Bar No. 1026045)

Skye Perryman (DC Bar No. 984573)

DEMOCRACY FORWARD FOUNDATION

P.O. Box 34553

Washington, DC 20043

(202) 448-9090

jconnolly@democracyforward.org

sgoetz@democracyforward.org

awiggins@democracyforward.org

oeconomos@democracyforward.org

schandy@democracyforward.org

sperryman@democracyforward.org

*Counsel for Plaintiffs*

*admitted Pro Hac Vice