**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| DOE 1, DOE 2, and DOE, on behalf of themselves and all other similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.<br><br><br>    *Defendants.* |

Case No. 1:25-cv-01124

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................iii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

   I.   The EEOC Launches a Public Investigation of Twenty Law Firms. ................................. 3

   II.   The EEOC's Investigation Demands Personal Information of the Firms' Employees and Applicants—Including Plaintiffs. ............................................................. 5

   III.   Law Firms Face Substantial Pressure to Comply with the Unlawful Investigation. .......... 7

ARGUMENT ..................................................................................................................... 10

   I.   Plaintiffs Are Entitled to Summary Judgment. ............................................................. 10

      A.  Defendants' Investigation Against the Law Firms Violates Title VII and the PRA. ......11

      B.  The Investigation Is Not a Lawful Charge Investigation. ............................................. 12

      C.  The Letters Are Not a Lawful Data-Collection Report. ................................................ 16

      D.  The Letters Do Not Comply with the Paperwork Reduction Act. ................................ 18

      E.  There Is a Cause of Action Against Defendants for Their Ultra Vires Actions. ............ 20

   II.   Plaintiffs Have Standing to Bring This Case. .................................................................. 21

   III.   Plaintiffs Are Entitled to Declaratory Relief. .................................................................. 27

   IV.   Plaintiffs Are Entitled to An Injunction. ......................................................................... 27

      A.  Absent An Injunction, Plaintiffs Will Suffer Irreparable Harm and Have No Adequate Relief at Law. ................................................................................. 28

      B.  The Balance of The Equities and the Public Interest Favor Plaintiffs. ......................... 30

CONCLUSION .................................................................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ..................................................................................... 9

*Airbnb, Inc. v. City of New York,*
  373 F. Supp. 3d 467 (S.D.N.Y. 2019) .................................................. 22, 29

*All. for Retired Ams. v. Bessent,*
  No. 25-cv-313, 2025 WL 740401  7, 2025) .................................... 23, 24, 30, 31

*Am. Ctr. for Int'l Lab. Solidarity v. Fed. Ins. Co.,*
  548 F.3d 1103 (D.C. Cir. 2008) ....................................................... 9, 16

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. DOL,*
  No. 2025 WL 1129227 (D.D.C. April 16, 2025) ................................... 22, 23

*Am. Fed'n of State, Cnty. and Mun. Emps. v. Soc. Sec'y Admin.,*
  No. 25-cv-596, 2025 WL 868953 (D. Md. Mar. 20, 2025) ............................ 23, 24

*Am. Fed'n of Tchrs. v. Bessent,*
  No. 25-cv-430, 2025 WL 895326  Md. Mar. 24, 2025),
  *stay granted pending appeal,* 2025 WL 1023638 .................................. 23, 24, 29

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
  64 F.4th 1354 (D.C. Cir. 2023) ......................................................... 28

*Baker DC v. NLRB,*
  102 F. Supp. 3d 194 (D.D.C. 2015) ..................................................... 22

*Dart v. United States,*
  848 F.2d 217 (D.C. Cir. 1988) .......................................................... 20

*Dep't of Com. v. New York,*
  588 U.S. 752 (2019) ................................................................... 27

*eBay v. MercExchange,*
  547 U.S. 388 (2006) ................................................................... 28

*EEOC v. Shell Oil Co.,*
  466 U.S. 54 (1984) ........................................................ 1, 13, 14, 15

*Friends of the Earth v. Laidlaw Env'tl Servs.,*
  528 U.S. 167 (2000) ................................................................... 22

*Garey v. James S. Farrin, P.C.,*
  35 F.4th 917 (4th Cir. 2022) .......................................................... 22

*Grundmann v. Trump,*
  2025 WL 782665 (D.D.C. Mar. 12, 2025) ................................................ 28

*Haw. Psychiatric Soc. v. Ariyoshi,*
  481 F. Supp. 1028 (D. Haw. 1979) ...................................................... 29

*Heagerty v. Equifax Info. Servs. LLC,*
  447 F. Supp. 3d 1328 (N.D. Ga. 2020) .............................................. 22, 26

*Hirschfeld v. Stone*,
    193 F.R.D. 175 (S.D.N.Y. 2000) ................................................................. 22

*Hyatt v. OMB*,
    908 F.3d 1165 (9th Cir. 2018) .................................................................. 20

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) .......................................................... 29

*Jenner & Block LLP v. DOJ*,
    No. (D.D.C. May 23, 2025) .......................................................... 8, 9, 16, 27

*Krakuer v. Dish Network, LLC*,
    925 F.3d 643 (4th Cir. 2019) ................................................................... 22

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) .................................................................... 31

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ........................................................................... 20

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
    135 F.3d 1260 (9th Cir. 1988) .................................................................. 29

*Perkins Coie LLP v. DOJ*,
    No. (D.D.C. May 2, 2025) ........................................................ 2, 8, 9, 12, 16

*Roberts v. Austin*,
    632 F.2d 1202 (5th Cir. 1980) ................................................................. 29

*TransUnion v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................... 23

*Truckers United for Safety v. Mead*,
    251 F.3d 183 (D.C. Cir. 2001) ......................................................... 3, 20, 21, 30

*U.S. Dep't of Defense v. FLRA*,
    510 U.S. 487 (1994) ........................................................................... 22

Univ. of Cal. Student Ass'n v. Carter,
    2025 WL 542586 (D.D.C. Feb. 17, 2025) ....................................................... 29

*Utility Air Regul. Grp. v. EPA*,
    744 F.3d 741 (D.C. Cir. 2014) ................................................................. 20

*Vasquez v. District of Columbia*,
    110 F.4th 282 (D.C. Cir. 2024) ................................................................ 10

*Whitfield v. Sec'y of State*,
    853 Fed. App'x 327 (11th Cir. 2021) ........................................................... 20

*Wilcox v. Trump*,
    2025 WL 720914 (D.D.C. Mar. 6, 2025) ........................................................ 28

**Statutes**

28 U.S.C. § 2201 ................................................................................ 28

42 U.S.C. § 2000e-4 .............................................................................. 11

42 U.S.C. § 2000e-5 ..................................................................................11, 12, 13, 29

42 U.S.C. § 2000e-8 ..................................................................................11, 14, 17, 29

44 U.S.C. § 3518 ............................................................................................ 18

44 U.S.C. § 3502 ........................................................................................... 18, 19

44 U.S.C. § 3506 ........................................................................................... 18, 19

44 U.S.C. § 3512 ........................................................................................... 19, 20

5 U.S.C. § 552a ............................................................................................. 30

Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ......................... 25

Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501 et seq ............................. 2

Privacy Act of 1974 ........................................................................................ 30

**Regulations**

29 C.F.R. § 12 .............................................................................................. 13

29 C.F.R. § 1601.14 ....................................................................................... 12

87 Fed. Reg. 67907 (Nov. 10, 2022) ............................................................... 19

88 Fed. Reg. 27504 (May 2, 2023) .................................................................. 20

Exec. Order No. 14244, Addressing Remedial Action of Paul Weiss,
     90 Fed. Reg. 13685 (Mar. 21, 2025) ......................................................... 9

Executive Order 14230, "Addressing Risks from Perkins Coie LLP,"
     90 Fed. Reg. 11781 (Mar. 6, 2025) .......................................................... 8

Publication of Notices of Systems of Records and Proposed New Systems of Records,
     81 Fed. Reg. 81116 (Nov. 17, 2016) ......................................................... 30

**Legislative History**

110 Cong. Rec. 7214 (1964) .....................................................................1, 14, 18

**Secondary Sources**

Tatyana Monnay, *Goodwin EEOC Disclosures Show Low Appetite to Take on Trump*,
     Bloomberg Law (May 23, 2025), https://news.bloomberglaw.com/business-and-
     practice/goodwins-eeoc-disclosures-show-low-appetite-to-take-on-trump .................. 10, 27

Tatyana Monnay et al., *Perkins Coie Spurns Trump Diversity Probe Request Citing Lawsuit*,
     Bloomberg Law (April 24, 2025) https://news.bloomberglaw.com/business-and-
     practice/perkins-coie-spurns-trump-diversity-probe-request-citing-lawsuit ....................... 10

**Other Authorities**

EEOC, *Commission Votes: April 2023*,
     https://www.eeoc.gov/commission-votes-april-2023
     [https://perma.cc/4VM5-XPYS] (last visited May 27, 2025)............................................ 20

EEOC, *Commission Votes: November 2022*,
https://www.eeoc.gov/commission-votes-november-2022
[https://perma.cc/D2D3-ZZX9] (last visited May 27, 2025)............................................ 20

EEOC, *Commissioner Charges*,
https://www.eeoc.gov/commissioner-charges
[https://perma.cc/GH7Q-LKDV] (last visited May 20, 2025)...................................... 13, 16

EEOC, *EEO Data Collections*,
https://www.eeoc.gov/data/eeo-data-collections
[https://perma.cc/4XR8-W9QN] (last visited May 27, 2025) .......................................... 17

EEOC, *EEO-1 Survey Instruction Booklet*,
https://www.eeoc.gov/sites/default/files/migrated_files/employers/eeo1survey/eeo1-2-2.pdf
[https://perma.cc/YUJ4-WZ4T] (last viewed May 27, 2025) .......................................... 17

EEOC, *EEOC Form 5: Charge of Discrimination*,
https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_5.pdf
[https://perma.cc/2TH4-F2UK]  (last visited May 27, 2025)............................................ 13

EEOC, *Questions and Answers for Respondents on EEOC's Position Statement Procedures*,
https://www.eeoc.gov/employers/questions-and-answers-respondents-eeocs-position-
statement-procedures [https://perma.cc/3PBN-CS38] (last visited May 27, 2025) ............... 25

Letter from Charlotte Burrows et al., Former EEOC Commissioners, to Andrea Lucas,
Acting Chair of the EEOC (March 18, 2025), https://www.chaifeldblum.com/wp-
content/uploads/2025/03/Letter-to-Acting-Chair-Lucas-March-18-2025.pdf
[https://perma.cc/7HER-5PNS] ............................................................................... 7

Nat'l Archives and Recs. Admin., *CUI Category: Personally Identifiable Information*,
https://www.archives.gov/cui/registry/category-detail/sensitive-personally-identifiable-info
[https://perma.cc/22P9-A8P7] (last visited May 27, 2025) ............................................ 25

## INTRODUCTION

Federal agencies are not entitled to disregard carefully crafted statutory parameters on the powers granted to them by Congress. Yet that is exactly what Defendants, the Equal Employment Opportunity Commission ("EEOC" or the "Commission") and Acting Chair Andrea Lucas, have done: they are conducting an *ultra vires* investigation to intimidate and coerce the legal profession by pressuring law firms to disclose detailed information about their hiring practices, including personal information about their employees and applicants. The Court should enjoin this unlawful collection of Plaintiffs' sensitive personal information and intrusion on their privacy.

As part of a broad campaign by the Trump administration to intimidate law firms, single out individual lawyers and other perceived enemies, and undermine the independence of the legal profession, Defendants initiated an investigation of twenty law firms that had undertaken voluntary efforts to examine and mitigate barriers to equal opportunity in the legal industry. In the March 17, 2025, letters—which Defendants made public—Acting Chair Lucas and the EEOC demanded that the firms turn over sensitive personal information about their employees and applicants, including their name, sex, race, contact information, academic performance, and compensation.

The undisputed material facts demonstrate that Defendants have no statutory authority to carry out this investigation and that Plaintiffs are entitled to summary judgment. Though Congress entrusted the Commission with the crucial task of investigating charges of discrimination filed by applicants and workers, Congress carefully limited that investigative authority, providing that "the Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) (quoting 110 Cong. Rec. 7214 (1964)). To protect both companies' and workers' privacy, Congress imposed strict confidentiality requirements on those charges and investigations. Congress also authorized the

1

Commission to require employers to provide reports to the EEOC—but only by regulation or order after public hearing.

Defendants have failed to comply with any of these legal requirements. Their investigation is not based on a charge but instead was instigated pursuant to an executive order demanding that the Chair of the EEOC investigate law firms for their employment practices. As another judge in this District recently noted, the "hallmarks of a legitimate investigation are missing here." *Perkins Coie LLP v. DOJ*, No. 25-cv-716, 2025 WL 1276857, at *34 (D.D.C. May 2, 2025). In fact, if Defendants were acting pursuant to a charge, they would be *criminally* liable for their public announcement of an investigation. Nor have Defendants complied with the requirements for an employer report. Before sending the letters, the Commission did not hold a public hearing or issue a regulation or order as required by statute. Indeed, the Commission has lacked a quorum to act since January 28, 2025.

In addition to exceeding their authority under Title VII, Defendants have violated the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501 *et seq.* The PRA requires federal agencies to go through a public comment process and obtain approval from the Office of Management and Budget ("OMB") when seeking answers to identical questions from, or imposing identical reporting or recordkeeping requirements on, ten or more persons. The investigative letters, which pose virtually identical questions to the twenty firms, are plainly subject to the PRA. But Defendants followed none of the required steps. These undisputed material facts demonstrate that the investigative letters are *ultra vires*. And Plaintiffs have standing to bring this action because they are harmed by the disclosure of their sensitive personal information through an *ultra vires* investigation, the harm to them is traceable to Defendants, and that harm is redressable by enjoining Defendants' actions.

2

This Court should declare that Defendants acted *ultra vires* under Title VII, enjoin Defendants from carrying out their unlawful investigation, and require return of materials obtained. Regarding the standards for an injunction, the government's unlawful collection and retention of Plaintiffs' personal information causes an irreparable harm for which there is no adequate remedy at law. By contrast, Defendants cannot establish a legitimate harm they would suffer if they cannot obtain and retain Plaintiffs' private, sensitive information. Moreover, the public interest is best served by prohibiting the federal government from using an illegal investigation to collect private and sensitive information from employees and applicants in the private sector. Indeed, the D.C. Circuit has held that a governmental agency can be held liable for conducting an *ultra vires* investigation and the court can enjoin the investigation and require the return of materials obtained. *Truckers United for Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001).

## FACTUAL BACKGROUND

### I. The EEOC Launches a Public Investigation of Twenty Law Firms.

Andrea Lucas has served as the Acting Chair of the Equal Employment Opportunity Commission since January 20, 2025. Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment (Plfs.' SMF) ¶ 1. The Commission has had only two members since January 28, 2025. Plfs.' SMF ¶ 2.

On March 17, 2025, the EEOC announced that it was conducting a race- and sex-discrimination investigation against twenty law firms under Title VII of the Civil Rights Act of 1964 by issuing a press release. Plfs.' SMF ¶ 3. The language of the press release demonstrates that the letters to the law firms are intended to initiate an investigation. In pertinent part, the press release states that "[b]ased on publicly available information, the letters note concerns that some firms' employment practices, including those labeled or framed as DEI, may entail unlawful disparate treatment in terms, conditions, and privileges of employment, or unlawful limiting,

segregating, and classifying based on race, sex, or other protected characteristics, in violation of Title VII of the Civil Rights Act of 1964 (Title VII)." *Id.* ¶ 4. Defendant Lucas stated: "The EEOC is prepared to root out discrimination anywhere it may rear its head, including in our nation's elite law firms. No one is above the law—and certainly not the private bar." *Id.* The press release contains a link to the twenty letters to the law firms. Plfs.' SMF ¶ 5.

The twenty law firms that received the letters are: Perkins Coie LLP; Cooley LLP; Reed Smith LLP; A&O Shearman; Debevoise & Plimpton LLP; Freshfields Bruckhaus Deringer LLP; Goodwin Procter LLP; Hogan Lovells LLP; Kirkland & Ellis LLP; Latham & Watkins LLP; McDermott Will & Emery; Milbank LLP, Morgan Lewis and Bockius LLP; Morrison and Foerster LLP; Ropes and Gray; Sidley and Austin; Simpson, Thacher and Bartlett LLP; Skadden, Arps, Slate, Meagher & Flom; White and Case LLP; and Wilmer Hale. Plfs.' SMF ¶ 8.[1]

The letters are similar. Seventeen of the twenty letters are virtually identical except for the name of the firm and related information, such as the name, title, and address information of the recipient of the letter. Plfs.' SMF ¶ 9. For Perkins Coie LLP, Cooley LLP, and Reed Smith LLP, the letters provide firm-specific information about the basis for their inclusion in the investigation. Plfs.' SMF ¶ 10.

In each letter, Acting Chair Lucas begins by stating: "Based on public statements and court filings by [law firm], I am seeking information about the firm's employment practices." Plfs.' SMF ¶ 11. Each letter also contains a general statement indicating why Acting Chair Lucas is concerned about the firm's practices: "I am concerned that [the firm's] 'diversity and inclusion' or other employment programs, policies, and practices may entail unlawful disparate treatment in terms, conditions, and privileges of employment, or unlawful limiting, segregating, and classifying

---

[1] The law firms are referred to by the names used by the EEOC.

based—in whole or in part—on race, sex, or other protected characteristics, in violation of Title VII." Plfs.' SMF ¶ 12.

## II.    The EEOC's Investigation Demands Personal Information of the Firms' Employees and Applicants—Including Plaintiffs.

The letters include thirty-seven requests for information, not including subparts, that are divided into six categories: (1) Internships, Fellowships, and Scholarships; (2) Other Hiring and Compensation Practices; (3) Other Terms, Privileges, or Conditions of Employment; (4) Data Disclosures, Staffing Decisions, and Other Actions Taken In Response to Client Reports; (5) Other Policies and Processes Incentivizing Decisions Motivated by Protected Characteristics; and (6) Partnership Decisions. Plfs.' SMF ¶ 10. The information requested in those thirty-seven requests is essentially identical.[2]

Seven of the requests ask each firm to provide personally identifiable information of persons employed by the firm as lawyers or law students or who have applied for positions. Plfs.' SMF ¶¶ 11-17.[3] Most of the requests seeking personal information ask for applicant and employee information going back to 2019, though in some instances the requests seek information from as early as 2015. Plfs.' SMF ¶ 13-22. The personal information requested includes name, sex, race, phone number, email address, law school GPA, title of position, compensation at the time of hiring and as of the date the letter was sent, whether fellows and summer associates received employment offers for subsequent employment, participation in firm affinity groups, equity or non-equity status for partner, and whether lawyers who left the firm did so voluntarily or involuntarily. *See id*.

Plaintiffs Does 1, 2, and 3 are law students whose personally identifiable information is responsive to information requested in the letter. During law school, they have applied to work at

---

[2] For the letter directed at Cooley LLP, there is one additional category, with four additional requests, relating to a 2022 Reduction in Force, and so the numbering of the requests in that letter is slightly different. *Id.*

[3] An eighth such request specific to Cooley LLP pertains to its 2022 Reduction in Force. Plfs.' SMF ¶ 18.

the following law firms, among others: Cooley LLP; Debevoise & Plimpton LLP; Freshfields
Bruckhaus Deringer LLP; Goodwin Procter LLP; Hogan Lovells LLP; Latham & Watkins LLP;
Morgan Lewis & Bockius LLP; Morrison and Foerster LLP; Ropes & Gray; Sidley and Austin;
Simpson Thacher & Bartlett LLP; Skadden, Arps, Slate, Meagher & Flom LLP; White & Case
LLP; and Wilmer Hale. Plfs.' SMF ¶¶ 23, 25, 27. Plaintiffs have requested certification of a class
of all persons whose names and other information are requested in the EEOC's investigative letters
(the "Plaintiff Class"). *See* Plaintiffs' Motion for Class Certification, ECF No. 25.

The letters direct the firms to "submit your responses and any supporting documentation
by **April 15, 2025**, to lawfirmDEI@eeoc.gov. If certain information is unavailable or requires
additional time to compile, please indicate this in your response and provide an estimated timeline
for submission." Plfs.' SMF ¶ 29 (emphasis in original). The letters also tell the firms to preserve
all information related to the information provided. *Id.*

Neither the press release nor the letters state that the letters were sent pursuant to a charge
made to the Commission or that the law firms were provided with a notice of charge consistent
with Title VII or the accompanying EEOC regulations. Plfs.' SMF ¶ 30. The EEOC did not
undertake a public-comment process before sending the letters and did not otherwise send them
pursuant to a Commission regulation or order. *Id.* ¶ 31. Nor do the letters display a valid control
number assigned by the Office of Management and Budget. *Id.* ¶ 32.

On March 18, 2025, four former EEOC Commissioners, two former EEOC Generals
Counsel, and one former Legal Counsel sent a letter, which they made public, to Acting Chair
Lucas. Letter from Charlotte Burrows et al., Former EEOC Commissioners, to Andrea Lucas,
Acting Chair of the EEOC (March 18, 2025), https://www.chaifeldblum.com/wp-
content/uploads/2025/03/Letter-to-Acting-Chair-Lucas-March-18-2025.pdf
[https://perma.cc/7HER-5PNS]. The former EEOC officials requested that she "withdraw the 20

letters that [she] issued to law firms on March 17, 2025." *Id.* They explained that "the EEOC has no authority to require information from employers under Title VII simply by the request of a Commissioner," that "Title VII does not authorize the sort of public demand for information encompassed in [the] letters to these law firms," that in an investigation authorized by law "she would not have been permitted to reveal the existence, target, or subject of your charge without violating Title VII's civil and criminal confidentiality provision," and that "[t]he detailed information requests contained in [her] letters also raise significant questions under the Paperwork Reduction Act (PRA)." *Id.*

**III.    Law Firms Face Substantial Pressure to Comply with the Unlawful Investigation**.

The EEOC's investigation is part of an ongoing campaign to pressure law firms into supporting the administration's agenda. President Trump has issued executive orders penalizing law firms for employing lawyers he disfavors, representing clients whose claims he opposes, and asserting a commitment to diversity, equity, and inclusion. *See* Plfs.' SMF ¶ 33. The targeted firms have three unpalatable choices: face substantial sanctions that interfere with their ability to represent clients; undertake costly litigation, further antagonizing the administration; or accede to the administration's demands, "changing client selection and hiring practices, and pledging pro bono work to the President's liking." *Jenner & Block LLP v. DOJ*, No. 25-cv-916, 2025 WL 1482021, at *12 (D.D.C. May 23, 2025); *see also Perkins Coie LLP v. DOJ*, No. 25-cv-716, 2025 WL 1276857, at *30 (D.D.C. May 2, 2025) (describing "the coercive power of such targeting by the Trump Administration").

The Commission's letters are part of this pressure campaign. Eleven days before Defendants initiated this investigation, President Trump issued Executive Order 14230, "Addressing Risks from Perkins Coie LLP," 90 Fed. Reg. 11781 (Mar. 6, 2025) (the "Executive Order"). Plfs.' SMF ¶ 34. Section 4(a) of the Executive Order directs the Chair of the EEOC to

"review the practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964, including whether large law firms: reserve certain positions, such as summer associate spots, for individuals of preferred races; promote individuals on a discriminatory basis; permit client access on a discriminatory basis; or provide access to events, trainings, or travel on a discriminatory basis." Addressing Risks from Perkins Coie LLP, 90 Fed. Reg. at 11782 § 4(a); Plfs.' SMF ¶ 35. The topics covered in the Executive Order are closely aligned with the topics covered in the letters. *Compare* Plfs.' SMF ¶ 36, *with id.* ¶¶ 13-22.

The Executive Order goes further, directing the Attorney General and State Attorneys general to coordinate with the Chair of the EEOC to "investigate the practices of large law firms as described in subsection (a) of this section who do business with Fede U ral entities for compliance with race-based and sex-based non-discrimination laws and take any additional actions the Attorney General deems appropriate in light of the evidence uncovered." Addressing Risks from Perkins Coie LLP, 90 Fed. Reg. at 11782 § 4(b). Notably, on April 3, 2025, twelve state Attorneys General sent letters to the same twenty law firms demanding that they produce the information set forth in Defendants' letter to both the EEOC and them. Plfs.' SMF ¶ 37.

Judge Howell subsequently enjoined the Executive Order as to Perkins Coie, finding that it violated the First, Fifth, and Sixth Amendments to the Constitution. *Perkins Coie*, 2025 WL 1276857, at *47–49. The court found that the government had "us[ed] the powers of the federal government to target lawyers for their representation of clients and avowed progressive employment policies in an overt attempt to suppress and punish certain viewpoints," *id.* at 3, and that this "is contrary to the Constitution, which requires that the government respond to dissenting or unpopular speech or ideas with 'tolerance, not coercion.'" *Id.* (quoting *303 Creative LLC v. Elenis*, 600 U.S. 570, 603 (2023). The court also enjoined the executive order's instruction to the

EEOC to investigate the firms on the basis that the EEOC could not institute an investigation without the filing of a charge with the Commission, and that, "Government counsel acknowledge[d] that no [investigative] charge meeting statutory prerequisites has been filed against" Perkins Coie. *Id.* at 24; In a second case enjoining a different executive order against Jenner & Block, Judge Bates similarly held that "the President may not evade the 'extensive regulation' governing EEOC proceedings." *Jenner & Block*, 2025 WL 1482021, at *19 (quoting *Am. Ctr. for Int'l Lab. Solidarity v. Fed. Ins. Co.*, 548 F.3d 1103, 1104-05 (D.C. Cir. 2008)).

Despite these infirmities, many firms have felt compelled to accede to the administration's demands. *See id.* at 7 ("[I]t appears to take extraordinary firmness to resist."). One of the executive order recipients, Paul Weiss, made several concessions, including "dedicating the equivalent of $40 million in pro bono legal services during [Trump's] term in office to support" administration priorities, to avoid targeting. *Id.*; Exec. Order No. 14244, *Addressing Remedial Action of Paul Weiss*, 90 Fed. Reg. 13685 (Mar. 21, 2025). The message was clear: comply with the President's wishes, or suffer an investigation for discrimination.

Five firms that received the law firm letters followed suit. Skadden, Arps, Slate, Meagher & Flom, Kirkland & Ellis LLP, Latham & Watkins LLP, A&O Shearman, and Simpson Thacher & Bartlett each agreed to provide $100 million or more in pro bono legal services and made other commitments. Plfs.' SMF ¶¶ 38-39.[4]

At least one firm, Goodwin Procter, has provided the EEOC with hundreds of pages of information about its employees and applicants. Tatyana Monnay, *Goodwin EEOC Disclosures Show Low Appetite to Take on Trump*, Bloomberg Law (May 23, 2025)

---

[4] It has been reported that the lawyer representing Skadden, Arps, Slate, Meagher & Flom LLP, Latham & Watkins LLP, A&O Shearman, and Simpson Thacher & Bartlett LLP informed Texas Attorney General Paxton that the five firms did not provide any information to the EEOC. Tatyana Monnay et al., *Perkins Coie Spurns Trump Diversity Probe Request Citing Lawsuit*, Bloomberg Law (April 24, 2025) https://news.bloomberglaw.com/business-and-practice/perkins-coie-spurns-trump-diversity-probe-request-citing-lawsuit.

https://news.bloomberglaw.com/business-and-practice/goodwins-eeoc-disclosures-show-low-appetite-to-take-on-trump. Another, Hogan Lovells, has reportedly requested more time to comply, rather than opposing the request outright. *Id.* And the President and the EEOC have confirmed that cooperation would be rewarded, When the President announced that the four firms had settled with him on April 11, 2025, he stated that the EEOC investigation against those firms would be terminated.  Plfs.' SMF ¶ 39. The same day, the EEOC issued a press release explaining that those four firms "chose to voluntarily resolve matters with the EEOC, without admission of liability, to avoid an extended dispute." Plfs.' SMF ¶ 40.

## ARGUMENT

### IV.   Plaintiffs Are Entitled to Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if there is no genuine issue of material fact and the party is entitled to judgment as of matter of law. *Vasquez v. District of Columbia*, 110 F.4th 282, 287 (D.C. Cir. 2024). Plaintiffs are entitled to summary judgment because Defendants' issuing of the investigative letters is beyond their authority under Title VII, these circumstances are sufficient to establish an *ultra vires* cause of action, and Plaintiffs have standing to bring this action.

### A.  Defendants' Investigation Against the Law Firms Violates Title VII and the PRA.

The undisputed material facts establish that Defendants sent the investigative letters without complying with the methods of Commission investigations and reports that Congress authorized in Section 709 of Title VII, 42 U.S.C. § 2000e-8.

First, the EEOC may instigate an investigation only pursuant to a formal charge filed under Section 706, 42 U.S.C. § 2000e-5. *See* 42 U.S.C. § 2000e-8(a).  Second, it may require employers to produce a report only after the EEOC undertakes a process that includes a public hearing and the issuance of an order or regulation. 42 U.S.C. § 2000e-8(c). Neither a charge, nor any

information the Commission obtains under 42 U.S.C. § 2000e-8, nor any attempts at informal resolution of alleged violations, may be made public prior to the initiation of a lawsuit pertaining to the information obtained. *Id.* §§ 2000e-5(c), 2000e-8(3). Any officer or employee who violates the confidentiality provisions is guilty of a misdemeanor and subject to fines and imprisonment. 42 U.S.C. §§ 2000e-5(c), 2000e-8(e).

Defendants failed to comply with either procedure. There is no indication of a charge investigation here: neither the press release nor the letters mention a charge, and Defendants did not follow the process set forth by statute or regulation for charge investigations—including that charge investigations remain strictly confidential. Nor did the letters satisfy the requirements of a data-collection report. They were not issued through an order or regulation and there was no public hearing. Furthermore, Defendants failed to satisfy the requirements of the Paperwork Reduction Act that apply to data collections. Absent a quorum of three members, 42 U.S.C. § 2000e-4(c), which the Commission has lacked since January 28, 2025, the Commission cannot even create a data-collection report. As Judge Howell recently observed in a case by one law firm challenging the Executive Order that prompted these investigations, the "hallmarks of a legitimate investigation are missing here, and the government makes no excuse for the EEOC simply ignoring these statutory requirements." *Perkins Coie*, 2025 WL 1276857, at *34.

**B. The Investigation Is Not a Lawful Charge Investigation.**

42 U.S.C. § 2000e-5 sets forth the process and requirements for charge investigations. Section 2000e-5(a) states that "[t]he Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of [Title VII]." Section 2000e-5(b) contains the specific provisions relating to EEOC enforcement of Title VII through charge investigations against private employers. The EEOC investigation process begins with the filing of a charge "by or on behalf of

a person claiming to be aggrieved, or by a member of the Commission alleging that an employer

has engaged in an unlawful employment practice." *Id.* The Commission then "shall serve a notice

of the charge (including the date, place and circumstances of the alleged unlawful employment

practice)" on the employer within ten days of receipt of the charge, and then "shall make an

investigation" of the charge. *Id.* The statute also requires that "charges shall be in writing under

oath or affirmation and shall contain such information and be in such form as the Commission

requires." *Id.*

      EEOC regulations, forms, and materials flesh out how the charge-investigation process

works. The regulations require the Commission to send the charge or notice thereof within ten

days of the Commission's receipt of the charge, notifying the respondent of "the date, place and

circumstances of the alleged unlawful employment practice." 29 C.F.R. § 1601.14. The

Commission has a charge form on its website, where the charging party must supply a myriad of

details of the charge and must sign it under penalty of perjury. EEOC, *EEOC Form 5: Charge of

Discrimination*, https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_5

.pdf [https://perma.cc/2TH4-F2UK] (last visited May 27, 2025). Commissioners may file charge

themselves but "must meet the same requirements that apply to all EEOC charges." EEOC,

*Commissioner Charges*, https://www.eeoc.gov/commissioner-charges [https://perma.cc/GH7Q-

LKDV] (last visited May 20, 2025). These requirements include that "Commissioner charges must

be in writing, signed, and verified," *id.*, and must "include the name, contact information and, if

known, the approximate number of employees or members of the employer, labor organization, or

employment agency that is the subject of the investigation (covered entity), as well as 'a clear and

concise statement of the facts, including pertinent dates, constituting the alleged unlawful

employment practices.'" *Id.* (quoting 29 C.F.R. § 12(a)(2)-(4)). Commissioners' charges, whether

initiated by EEOC staff or the Commissioners, are assigned to field offices and are investigated "the same way" as charges filed by a member of the public. *Id.*

Consistent with the statutory provisions and regulatory materials, the Supreme Court has held that the EEOC cannot institute an investigation absent a formal charge. *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984). In *Shell Oil*, the Court described the EEOC's investigatory authority and charge process, explaining that the "process begins with the filing of a charge with the EEOC alleging that a given employer has engaged in an unlawful employment practice," and noting that a charge may be filed by an aggrieved individual or by a Commissioner. *Id.* at 62 (citing 42 U.S.C. § 2000e-5(b)). "Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." *Id.* at 63 (quoting 42 U.S.C. § 2000e-5(b)). And the Court identified the next step in the investigatory process as the Commission's obligation to provide notice of the charge within ten days. *Shell Oil*, 466 U.S. at 63.

The Court stressed that this charge investigation process is the exclusive means by which the EEOC may commence an investigation against an employer: "[T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" *Id.* at 64 (quoting 42 U.S.C. § 2000e–8(a)).

The Court explained that the legislative history of Title VII reinforced its conclusion that the Commission may not initiate investigations through procedures other than those the statute specifies:

> The legislative history makes clear that this limitation on the Commission's authority is not accidental. As Senators Clark and Case, the "bipartisan captains" responsible for Title VII during the Senate debate, explained in their Interpretative Memorandum:

"It is important to note that the Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing. In this respect the Commission's investigatory power is significantly narrower than that of the Federal Trade Commission or of the Wage and Hour Administrator, who are authorized to conduct investigations, inspect records, and issue subpenas [sic], whether or not there has been any complaint of wrongdoing." 110 Cong. Rec. 7214 (1964) (citations omitted).

*Id.* at 64-65.

The Supreme Court then explicitly linked the Commission's investigatory power to the filing of a charge: "[W]e must strive to give effect to Congress' purpose in establishing a linkage between the Commission's investigatory power and charges of discrimination. If the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid charge, Congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted." *Id.* at 65.

The undisputed material facts clearly show that the letters are an investigation that was not preceded by a formal charge and are therefore *ultra vires*. The press release announcing the letters states that Defendants have issued the letters because they believe the firms may have violated Title VII. Plfs.' SMF ¶ 4. Acting Chair Lucas's statement that "[t]he EEOC is prepared to root out discrimination anywhere it may rear its head, including in our nation's elite law firms," *id.*, underscores the investigatory nature of the letters. And in the letters themselves, Commissioner Lucas specifically ties the information requests to her concern that the firms might be violating Title VII:  "I am concerned that [the firm's] 'diversity and inclusion' or other employment programs, policies, and practices may entail unlawful disparate treatment in terms, conditions, and privileges of employment, or unlawful limiting, segregating, and classifying based—in whole or in part—on race, sex, or other protected characteristics, in violation of Title VII." Plfs.' SMF ¶ 12. Furthermore, in the press release announcing that four firms had reached a resolution with the

Commission, the EEOC used the terms "settlement," "matters," and "dispute," Plfs.' SMF ¶ 40, indicia that the EEOC considered the letters to be part of an investigation where it had been in an adversarial position with each firm.

There are no indicia that this investigation complied with the charge-investigation process under 42 U.S.C. § 2000e-5(b) and related EEOC regulatory materials. Neither the press release nor the letters indicate that the letters were sent as a result of a charge or that the law firms were provided with a notice of charge. Plfs.' SMF ¶ 30. Moreover, the letters were announced through a press release and made available to the public through the EEOC's website, Plfs.' SMF ¶¶ 3-7, which would violate the confidentiality provision of 42 U.S.C. § 2000e-5(b). If there had been a Commissioner Charge from Acting Chair Lucas, she would "not participate in [its] investigation," according to the EEOC process as set forth on its website. EEOC, *Commissioner Charges*, https://www.eeoc.gov/commissioner-charges [https://perma.cc/GH7Q-LKDV] (last visited May 20, 2025). Finally, in the Perkins Coie litigation, the government admitted that nobody had filed an EEOC charge against Perkins Coie. *Perkins Coie*, 2025 WL 1276857, at *24.

In granting summary judgment to Perkins Coie regarding the application of Section 4 of Executive Order No. 14230 to the firm, the district court found that the EEOC's letter did not follow the congressionally required process and the EEOC's own procedures and instead resulted from the Executive Order:

> [O]n March 17, 2025, eleven days after EO 14230 was issued and six days after this lawsuit was filed . . . . the Acting Chair of the EEOC sent an 11-page letter to plaintiff requesting information on plaintiff's hiring and employment practices . . . and posted publicly a press release that same day about the letter and others sent to 19 additional law firms.
>
> A legitimate investigation by the EEOC would follow the congressionally mandated process, with appropriate initiation procedures and compliance with statutorily mandated protections afforded to plaintiff. . . . These hallmarks of a legitimate investigation are missing here, and the government makes no excuse for the EEOC simply ignoring these statutory requirements. By not following its own procedures, the EEOC has

> undermined the legitimacy of its own investigation, revealing this investigation of plaintiff to be a product of the retaliation ordered by EO 14230 rather than any legitimate investigative activity.

*Perkins Coie*, 2025 WL 1276857, at *34; *see also Jenner & Block*, 2025 WL 1482021, at *19 ("The President may not evade the 'extensive regulation' governing EEOC proceedings.") (quoting *Am. Ctr. for Int'l Lab. Solidarity*, 548 F.3d at 1104-05)). The undisputed material facts establish the same is true regarding the other letters. Plfs.' SMF ¶¶ 3-7, 30-32.

### C. The Letters Are Not a Lawful Data-Collection Report.

The sending of the letters also does not comply with the various statutory and regulatory requirements of a data-collection report under Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c). Section 709(c) provides for instances where the Commission can require document retention and the reporting of information from employers. But those reports are required only after the Commission prescribes them "by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder." 42 U.S.C. § 2000e-8(c). Defendants cannot plausibly argue that the information requested in the letters constitute reports under Section 709(c), as there has been no public hearing, no regulation, and no order from the EEOC Commissioners. Indeed, absent a quorum, the Commission cannot engage in those activities.

Moreover, the information requested in the letters is substantially different and more intrusive than what is typically asked of employers in Section 709(c) reports. The EEOC has never used Section 709(c) to investigate specific employers; rather, Section 709(c) reporting requirements apply to *all* employers, unions, state and local governments, or public schools with 100 or more employers. *See* EEOC, *EEO Data Collections*, https://www.eeoc.gov/data/eeo-data-collections [https://perma.cc/4XR8-W9QN] (last visited May 27, 2025). Nor has the EEOC ever used Section 709(c) to collect personal information of individual employees; rather, all reports call

for aggregate demographic data. *See id.*; *see, e.g.*, EEOC, *EEO-1 Survey Instruction Booklet*, https://www.eeoc.gov/sites/default/files/migrated_files/employers/eeo1survey/eeo1-2-2.pdf [https://perma.cc/YUJ4-WZ4T] (last viewed May 27, 2025). There would thus be a serious question whether the EEOC could target specific employers and demand individual data through Section 709(c) even if Defendants had gone through the requisite public hearing and regulation or order.

Indeed, the legislative history demonstrates that Congress did not intend data-collection reports to function like the fishing expedition that has occurred here. In the same Interpretative Memorandum the Supreme Court quoted in *Shell Oil*, Senators Clark and Case stated:

> The provisions of section 709(c) have been carefully drawn to prevent the imposition of unreasonable burdens on business and there are more than the customary safeguards against arbitrary action by the Commission.
>
> The requirements to be imposed by the Commission must be "reasonable, necessary, or appropriate" for the enforcement of the title. Such requirements cannot be adopted without a public hearing at which the persons to be affected would have an opportunity to make their views known to the Commission. . . . Any recordkeeping requirements could be worked into existing requirements so as to result in a minimum additional burden.

110 Cong. Rec. 7214 (1964). The EEOC's sending of the law firm letters falls far beyond what Congress contemplated in Section 709(c). The EEOC's action is arbitrary, its requests are burdensome, and affected parties—including Plaintiffs—did not have the opportunity to make their views known to the Commission before it sent the letters.

### D.  The Letters Do Not Comply with the Paperwork Reduction Act.

In sending the letters, Defendants also did not comply with the Paperwork Reduction Act. The Paperwork Reduction Act applies whenever an agency conducts a "collection of information" calling for "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons." 44 U.S.C. § 3502(3)(A)(i). Before seeking such a

collection of information, the agency must seek public comment and approval from OMB. 44 U.S.C. § 3506. The Paperwork Reduction Act applies not only to collections that "requir[e] the disclosure" of information but also any other action "obtaining, causing to be obtained, [or] soliciting" of such information, "regardless of form or format," *id.* § 3502(3)(A), with exceptions not relevant here, *id.* § 3518(c)(1).

The statute sets out protections for respondents if the collection of information is improper. It states that "no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if—(1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a). It further provides that "[t]he protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto. 44 U.S.C. § 3512(b).

The letters constitute a "collection of information" comprising "identical questions posed to . . . ten or more persons." 44 U.S.C. § 3502. But Defendants did not submit the letters through the required public-comment process, did not issue them through a regulation or order, and did not subject them to the approval process from the Office of Management and Budget. 44 U.S.C. § 3506. Moreover, the letters do not display a valid control number assigned by the Director of the Office of Management and Budget and do not inform the recipients that they are not required to respond to the collection of information unless it displays a valid control number as required by 44 U.S.C. § 3512(a).

The process the Commission has employed regarding the EEO-1 form illustrates the difference between a data-collection report issued in compliance with Title VII and the Paperwork

Reduction Act and what Defendants did here. In 2022-23, when the Commission sought to make a change to the EEO-1 form, the Commission filed a notice of information collection in the Federal Register seeking comments relating to the change, 87 Fed. Reg. 67907 (Nov. 10, 2022), followed by a second notice that the proposed change had been submitted to the Office of Management and Budget that gave the public a second opportunity to provide comment, 88 Fed. Reg. 27504 (May 2, 2023). Both notices were submitted only after the Commission voted to do so. EEOC, *Commission Votes: November 2022*, https://www.eeoc.gov/commission-votes-november-2022 [https://perma.cc/D2D3-ZZX9 ] (last visited May 27, 2025); EEOC, *Commission Votes: April 2023*, https://www.eeoc.gov/commission-votes-april-2023 [https://perma.cc/4VM5-XPYS] (last visited May 27, 2025).

Thus, by issuing the letters, Defendants have violated Title VII and the Paperwork Reduction Act.[5]

### E.  There Is a Cause of Action Against Defendants for Their Ultra Vires Actions.

The Supreme Court has long recognized that an agency action can be challenged as *ultra vires* when an agency employs "an attempted exercise of power that has been specifically withheld" by Congress. *Leedom v. Kyne*, 358 U.S. 184, 188 (1958). In other words, "[w]hen Congress limits its delegation of power, courts infer (unless the statute clearly directs otherwise) that Congress expects this limitation to be judicially enforced." *Dart v. United States*, 848 F.2d 217, 223 (D.C. Cir. 1988) (applying *Kyne* to hold that the Secretary of Commerce had acted *ultra vires* when he exercised functions not specified in the Export Administration Act).

This principle applies to investigations. In *Truckers United for Safety*, 251 F.3d 183, an

---

[5] Though a violation of the Paperwork Reduction Act can serve as a defense when the government attempts to compel a party to respond to a data collection document, it typically does not give rise to a cause of action. 44 U.S.C. § 3512; *Utility Air Regul. Grp. v. EPA*, 744 F.3d 741, 750 n.6 (D.C. Cir. 2014); *Whitfield v. Sec'y of State*, 853 Fed. App'x 327, 331 (11th Cir. 2021); *Hyatt v. OMB*, 908 F.3d 1165, 1173 (9th Cir. 2018). As discussed below, Defendants' noncompliance with the Paperwork Reduction Act is relevant to the balancing of the equities and the public interest.

association of motor carriers and individual motor carriers sued the Inspector General of the Department of Transportation, alleging that the IG did not have the legal authority to conduct an *ultra vires* investigation of motor carriers' compliance with safety regulations. During the investigation, the IG conducted searches of motor carriers and seized records. A nonprofit association of motor carriers and individual carriers sued. At the time the IG conducted its investigation, it did not have the authority to conduct such an investigation, but after the investigation was completed and before the lawsuit was filed, a statute passed by Congress gave the IG the authority to conduct such an investigation. The district court had granted summary judgment to the IG because of the new statute. *Id.* at 184-86. The D.C. Circuit vacated the district court's decision in part. It held that under the governing statute at the time, "[t]he actions of the IG were *ultra vires*, causing injury to appellants for which they are entitled to relief." *Id.* at 190. The court ordered the IG "to return all materials seized during the *ultra vires* searches of appellants' premises." *Id.* at 192.

Defendants' actions fall within the principles set forth in *Kyne*, *Dart*, and *Truckers United for Safety*. As discussed above, Title VII and its legislative history establish that the EEOC cannot institute an investigation without a charge. In sending the investigation letters to the law firms and making the investigations public, Defendants have acted in excess their statutory authority and therefore can be sued under an *ultra vires* cause of action.

## V.    Plaintiffs Have Standing to Bring This Case.

Plaintiffs, as individuals whose personally identifiable information is maintained by the law firms and requested by Defendants, have standing to challenge the unlawful collection of that information.

Establishing standing requires a plaintiff to show: "(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Env'tl Servs.*, 528 U.S. 167, 180-81 (2000).

The individual Plaintiffs satisfy the three-part test. First, they are substantially likely to suffer an injury in fact that is imminent, concrete, and particularized. Courts have long recognized that "individual employees have a valid interest in the privacy of their personal information." *Baker DC v. NLRB*, 102 F. Supp. 3d 194, 203 (D.D.C. 2015); *see also, e.g.*, *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("[I]njuries to personal privacy have long been 'recognized in tort law and redressable through private litigation.'") (quoting *Krakuer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019)); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga. 2020) (collecting cases "where a defendant has illegitimately accessed personal or confidential information"); *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019) ("The disclosure of private, confidential information 'is the quintessential type of irreparable harm that cannot be compensated or undone by money damages.'") (quoting *Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000)); *cf. U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 500 (1994) ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form.").

Numerous recent cases regarding the disclosure of sensitive personally identifiable information to government officials with no right to obtain it have recognized that individuals whose information is at stake (or associations suing on behalf of such individuals) have standing to challenge those disclosures. *See, e.g.*, *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. DOL*, No. 25-cv-339, 2025 WL 1129227, at *6-10 (D.D.C. April 16, 2025) (labor unions had associational standing to challenge defendant agencies alleged disclosure of personally identifiable information

to non-agency personnel); *Am. Fed'n of Tchrs. v. Bessent*, No. 25-cv-430, 2025 WL 895326, at *8-13 (D. Md. Mar. 24, 2025) (finding plaintiffs harmed by disclosure of information submitted in connection with student loans to DOGE), *stay granted pending appeal*, 2025 WL 1023638; *Am. Fed'n of State, Cnty. and Mun. Emps. v. Soc. Sec'y Admin.*, No. 25-cv-596, 2025 WL 868953, at *43-44 (D. Md. Mar. 20, 2025) (finding union members and their associations harmed by disclosure of information possessed by Social Security Administration to DOGE); *All. for Retired Ams. v. Bessent*, No. 25-cv-313, 2025 WL 740401, at *16 (D.D.C. Mar. 7, 2025) (finding membership organization, whose members received payments from the federal government, harmed by disclosure of their personally identifiable information to DOGE).

In each of these cases, the courts examined whether the plaintiffs had established a concrete harm for standing purposes as the Supreme Court had defined it in *TransUnion v. Ramirez*, 594 U.S. 413 (2021). "To determine whether the concrete-harm requirement has been met, 'courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Am. Fed'n of Tchrs.*, 2025 WL 895326, at *8 (quoting *TransUnion*, 594 U.S. at 424). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury" but the "inquiry 'does not require an exact duplicate in American history and tradition.'" *Id.* (quoting *TransUnion*, 594 U.S. at 424). These can "include injuries such as reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* (quoting *TransUnion*, 594 U.S. at 424).

As these cases have recognized, the harm from an unauthorized collection or disclosure of personally identifiable information is a concrete injury analogous to the common law tort of intrusion upon seclusion. *See Am. Fed'n of Labor*, 2025 WL 1129227, at *7-8; *Am. Fed'n of Tchrs.*, 2025 WL 895326, at *8-13; *Am. Fed'n of State, Cnty. and Mun. Emps.*, 2025 WL 868953, at *35-

44; *All. for Retired Ams.*, 2025 WL 740401, at *15-17. For example, in *American Federation of Teachers*, "plaintiffs gave their private information to the government with the expectation that the government would not disclose it to anyone within the government who was not authorized to access it." 2025 WL 895326, at *10. The court found that if disclosure of the plaintiffs' information violated the Privacy Act, as it assumed for standing purposes, then the plaintiffs had suffered harm:

> [T]he plaintiffs have established that their trust has been breached, that government employees who should not have access to their information do, and that those employees have accessed records containing their PII. Access to those records by unauthorized government officials intrudes into their private lives. This intrusion is not speculative; it is actual.

*Id.* at 11. The court recognized the harm that individuals suffer when the government obtains access to their private information through improper means: "To say that the plaintiffs suffer no intrusion upon their private affairs when their personal information is accessed by government employees who have no right to access it would nullify their cognizable interest in preventing unlawful government intrusion into their private affairs." *Id.*

Defendants' *ultra vires* investigation causes just such an injury. In the letters, Defendants demand personal identifying information and sensitive details from Plaintiffs' applications and employment files. Among other things, they request each individual's name, sex, race, phone number, email address, law school, law school GPA, compensation, and participation in affinity groups, along with details about their hiring, promotion, equity status, and/or discharge, including whether any discharge was voluntary or involuntary. Plfs.' SMF ¶¶ 13-22.

This personal information includes sensitive, private details that Plaintiffs reasonably expected would be kept private. An individual's sex, race, contact information, academic performance, compensation, and reasons for separating from a job are private matters in which individuals have a reasonable expectation of privacy.

The federal government itself recognizes that much of this information constitutes sensitive or confidential personally identifiable information. For example, in its instructions to employers responding to formal charge investigations, the EEOC identifies "personal phone numbers" and "personal email addresses" as confidential information that should be segregated to minimize unnecessary disclosure. EEOC, *Questions and Answers for Respondents on EEOC's Position Statement Procedures*, https://www.eeoc.gov/employers/questions-and-answers-respondents-eeocs-position-statement-procedures [https://perma.cc/3PBN-CS38] (last visited May 27, 2025). The National Archives and Records Administration, which oversees agencies' management of unclassified information, has recognized that "[e]thnic or religious affiliation" is sensitive personally identifiable information, whose "disclos[ure] without authorization could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual." Nat'l Archives and Recs. Admin., *CUI Category: Personally Identifiable Information*, https://www.archives.gov/cui/registry/category-detail/sensitive-personally-identifiable-info [https://perma.cc/22P9-A8P7] (last visited May 27, 2025). It likewise recognizes that information about employees' performance or contact information may be similarly "sensitive." *Id.* And Congress has recognized an interest in the privacy of academic information. *See* Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g(b) (penalizing educational institutions for nonconsensual release of education records).

It is reasonable for Plaintiffs to expect that an employer will keep that information confidential unless required by law to disclose it.[6] In this case, that is exactly what the Plaintiffs believed: that the firms to which they applied would keep their personal information to themselves,

---

[6] One circumstance where the law firms might be required by law to provide confidential employee information would be a charge investigation. But, as already explained, EEOC is not acting pursuant to a charge investigation. Moreover, as explained *infra* Section II.A., any personal information collected in such a circumstance would be subject to confidentiality protections preventing further disclosure, which does not appear to be the case for this *ultra vires* investigation.

24

to be viewed only by those with input on their employment status. *See* ECF No. 25-5, Declaration of Doe 1 ("Doe 1 Decl.") ¶ 4; ECF No. 25-6, Declaration of Doe 2 ("Doe 2 Decl.") ¶ 6; ECF No. 25-7, Declaration of Doe 3 ("Doe 3 Decl.") ¶ 4. That reasonable expectation has been threatened by Defendants' unlawful investigation.

The harm from an unauthorized disclosure of personal information—itself sufficient to satisfy the injury requirement—is heightened here. Plaintiffs fear not just the disclosure of information to the government, *see* Doe 1 Decl. ¶¶ 6-8; Doe 2 Decl. ¶¶ 8-10; Doe 3 Decl. ¶¶ 6-7, but the disclosure of information to the government in connection with the government's targeting of law firms for political disfavor, *see* Doe 1 Decl. ¶¶ 6-8; Doe 2 Decl. ¶¶ 8-10; Doe 3 Decl. ¶¶ 6-7. Plaintiffs reasonably fear that the disclosure of their personal information means that they, too, will be targeted. *See id.*

Plaintiffs' injury is thus concrete. Similarly, there can be no dispute that it is particularized, given that the data is personally identifying. *See, e.g.*, *Heagerty*, 447 F. Supp. 3d at *1337 ("The defendants do not dispute that the injury alleged by the plaintiff is particularized; after all, it was *his* information that was purportedly disclosed without a permissible purpose."). And it is actual or imminent; Defendants requested production of the information by April 15, with an allowance for information that "requires additional time to compile." Plfs.' SMF ¶ 29. At least one firm has already produced information to Defendants, while another has requested more time to comply. Tatyana Monnay, *Goodwin EEOC Disclosures Show Low Appetite to Take on Trump*, Bloomberg Law (May 23, 2025), https://news.bloomberglaw.com/business-and-practice/goodwins-eeoc-disclosures-show-low-appetite-to-take-on-trump.

As Judge Bates recently observed, "it appears to take extraordinary firmness to resist" the administration's pressure. *Jenner & Block*, 2025 WL 1482021, at *7. Given the threat of retaliation against employers that fail to comply, such as being the target of an Executive Order, Defendants

25

likely have or soon will wrongfully obtain Plaintiffs' information from several of the firms. Thus, Plaintiffs can establish the first element of standing.

Plaintiffs also satisfy the second and third elements of standing. The imminent harm suffered by Plaintiffs is traceable to Defendants' unlawful investigation: without the letters, Defendants would not obtain Plaintiffs' personal information. *See Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (injury is traceable to government action where it results from "the predictable effect of Government action on the decisions of third parties"). And the Court can redress those harms by ordering Defendants to withdraw the letters, return any information provided by the law firms, and destroy any physical or electronic copies of the information.

Plaintiffs are entitled to summary judgment. The undisputed material facts establish that, as a matter of law, Defendants' dissemination of the letters of the law firms is an *ultra vires* investigation that harms Plaintiffs by seeking to unlawfully obtain their sensitive personal information.

## VI.    Plaintiffs Are Entitled to Declaratory Relief.

The Declaratory Judgment Act provides in pertinent part: "In a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

Plaintiffs are entitled to a declaration that Defendants Acting Chair Andrea Lucas and the Equal Employment Opportunity Commission acted ultra vires and violated Title VII of the Civil Rights Act of 1964 by sending investigative letters to twenty law firms on March 17, 2025, without a properly filed charge and by making their investigation public. Such relief is particularly

appropriate here as it informs not just the parties, but third parties such as the law firms that received the letters, that Defendants had no authority to send them.

## VII.    Plaintiffs Are Entitled to An Injunction.

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange*, 547 U.S. 388, 391 (2006). "The first two factors 'are often considered together.'" *Grundmann v. Trump*, 2025 WL 782665, at *16 (D.D.C. Mar. 12, 2025) (quoting *Wilcox v. Trump*, 2025 WL 720914, at *15 n.20 (D.D.C. Mar. 6, 2025)). "When the defendant is the government, factors (3) and (4) merge." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023).

Plaintiffs satisfy each of these elements.

### A.    Absent An Injunction, Plaintiffs Will Suffer Irreparable Harm and Have No Adequate Relief at Law.

"Many [courts] have held that 'ongoing unauthorized disclosure, and even the mere unauthorized retention, of sensitive personal information is irreparable harm that money damage cannot remedy.'" *Am. Fed'n of Tchrs.*, 2025 WL 895326, at *30 (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab'y,* 135 F.3d 1260, 1275 (9th Cir. 1988)); *Roberts v. Austin*, 632 F.2d 1202, 1214 (5th Cir. 1980); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022); *Haw. Psychiatric Soc. v. Ariyoshi*, 481 F. Supp. 1028, 1052 (D. Haw. 1979); *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019). As the court in the *Airbnb* case stated: "The disclosure of private, confidential information 'is the quintessential type of irreparable harm that cannot be compensated or undone by money damages.'" 373 F. Supp. 3d at

499.  Accordingly, in that case, the district court found that a New York City ordinance that would have required Airbnb to disclose hosts' information, such as their names, addresses, and rent received per month, to the government constituted irreparable harm. *Id.* The irreparable harm to Plaintiffs is similar here. Without an injunction, Plaintiffs' reasonable expectation of privacy will likely be destroyed, as the EEOC will likely obtain and retain their personal information.

Furthermore, absent an injunction, the EEOC would appear to be under no obligation to keep the information it obtains confidential.  This would constitute additional irreparable injury to Plaintiffs. *Univ. of Cal. Student Ass'n v. Carter*, 2025 WL 542586, at *5 (D.D.C. Feb. 17, 2025) ("Courts find dissemination of information to be an irreparable injury where, for example, highly sensitive information … ends up in the hands of someone with no obligation to keep it confidential.").  Unlike charge investigations and the information obtained through data collection reports that are subject to confidentiality requirements, 42 U.S.C. §§ 2000e-5(b), § 2000e-8(e), there are no confidentiality requirements under Title VII that apply to information obtained through the *ultra vires* investigative letters. And the EEOC does not represent that it will keep the information confidential. Indeed, the Executive Order contemplates coordination among the EEOC, the Attorney General, and state Attorneys General regarding the investigation of the law firms. Plfs.' SMF ¶ . This is in notable contrast to the press release that says that any information provided by "whistleblowers" about the firms will be kept confidential Plfs.' SMF ¶ 6.

Nor can Plaintiffs rely on the Privacy Act to ensure that EEOC will keep their information confidential. The Privacy Act governs only information stored in a "system of records," defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5); *see also id.* § 552a(b) (setting conditions on disclosure of "any record which is contained in a system of records"). The EEOC's collection of

data from the law firms is organized by firm, not by individual, and thus may fall outside the Privacy Act's protections. Similarly, this collection does not appear to fall within any of the EEOC's published systems of records, *see* Privacy Act of 1974; Publication of Notices of Systems of Records and Proposed New Systems of Records, 81 Fed. Reg. 81116 (Nov. 17, 2016) (listing EEOC's systems of records), and thus the EEOC's sharing of this information does not seem to be governed by any of the restrictions it has acknowledged for those systems.

The DC Circuit's decision in *Truckers United for Safety*, 251 F.3d at 190-92, also establishes that in the case of an *ultra vires* investigation the appropriate remedy is injunctive relief that orders the end of the investigation and requires the government agency to give up possession of the materials obtained in the investigation.[7]

### B. The Balance of The Equities and the Public Interest Favor Plaintiffs.

Lastly, the balance of the equities and the public interest also weigh in Plaintiffs' favor. Plaintiffs' private, confidential information, for which they have a reasonable expectation of privacy, will be disclosed absent relief. Conversely, Defendants stand to suffer no legitimate harm if an injunction is granted, because they have no right to obtain private information through an improper investigation carried out in violation of two federal statutes. As to the public interest, "There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up). Here, given that Defendants violated both the Title VII and the

---

[7] In *Alliance for Retired Americans*, 2025 WL 740401, at *21, the district court denied plaintiffs' motion for a *preliminary* injunction because they could not demonstrate irreparable harm during the pendency of the litigation, due to the government officials' obligation to keep the information confidential. The court noted that it could grant "corrective relief" later in the case, such as ordering "individuals who received the information to return or destroy it." *Id.* That ultimate relief, at the end of the case, is precisely what Plaintiffs seek here. Moreover, as discussed above, the government officials at issue here do not appear to be under any confidentiality obligations regarding information obtained through this extrastatutory investigation.

Paperwork Reduction Act as part of an *ultra vires* investigation, the public interest is in favor of granting injunctive relief.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and declaratory and injunctive relief.

Dated: June 5, 2025                        Respectfully submitted,

_/s/  Jennifer Fountain Connolly_

Jennifer Fountain Connolly (DC Bar No. 1019148)
Sarah Goetz (DC Bar No. 1645309)
Audrey Wiggins (DC Bar No. 482877)*
Orlando Economos (DC Bar No. 90013791)
Sunu P. Chandy (DC Bar No. 1026045)
Skye Perryman (DC Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jconnolly@democracyforward.org
sgoetz@democracyforward.org
awiggins@democracyforward.org
oeconomos@democracyforward.org
schandy@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*

* *admitted pro hac vice*