UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOE 1, et al.,

          Plaintiffs,

    v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, *et al.*,

          Defendants.

Civil Action No. 25-1124 (RBW)

**DEFENDANTS' COMBINED OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Background ........................................................................................................................... 1

I.    The March 17, 2025, Letters Request Law Firms To Provide Information
      Pursuant To A "Review" By The EEOC. ........................................................... 1

II.   The Instant Lawsuit .......................................................................................... 4

Legal Standards .................................................................................................................. 5

Argument ............................................................................................................................. 8

I.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs Have Failed To
      Plead Facts To Establish Standing ................................................................... 8

      A.    Plaintiffs Have Not Established Any Concrete Harm Resulting From The
            March 17, 2025, Letters ...................................................................... 10

      B.    Plaintiffs Have Failed To Establish The Requisite Causation ................ 17

      C.    Plaintiffs Have No Standing to Assert an *Ultra Vires* Claim Based on the
            Paperwork Reduction Act ...................................................................... 20

II.   Plaintiffs Have Failed To State A Claim for *Ultra Vires* Review ...................... 21

III.  Plaintiffs Are Not Entitled To Declaratory Relief or an Injunction ................... 24

Conclusion ......................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Air Excursions v. Yellen,*
  66 F.4th 272 (D.C. Cir. 2023) ................................................................... 10, 16

*All. for Retired Ams. v. Bessent,*
  No. 25-0313, 2025 U.S. Dist. LEXIS 42019 (D.D.C. Mar. 7, 2025) ..................................... 15

*ALPO Petfoods, Inc. v. Ralston Purina Co.,*
  913 F.2d 958 (D.C. Cir. 1990) ........................................................................ 25

*Am. Butterfly Ass'n v. Wolf,*
  977 F.3d 1244 (D.C. Cir. 2020) ................................................................. 6, 21, 24

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Labor,*
  No. 25-0339, 2025 U.S. Dist. LEXIS 72516 (D.D.C. Apr. 16, 2025) ............................ 14-15

*Am. Nat'l Ins. Co. v. FDIC,*
  642 F.3d 1137 (D.C. Cir. 2011) ....................................................................... 6

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................... 7

*Ariz. Christian Sch. Tuition Org. v. Winn,*
  563 U.S. 125 (2011) .................................................................................... 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................... 6

*Brewer v. Holder,*
  No. 08-1747, 2013 WL 12399112 (D.D.C. Dec. 16, 2013) ................................................ 9

*Celotex v. Catrett,*
  477 U.S. 317 (1986) .................................................................................... 7

*Citizens for Responsibility & Ethics v. Dep't of the Treas.,*
  21 F. Supp. 3d 25 (D.D.C. 2014) ................................................................... 19-20

*City of Waukesha v. EPA,*
  320 F.3d 228 (D.C. Cir. 2003) ......................................................................... 9

*Clapper v. Amnesty Int'l,*
  568 U.S. 398 (2013) ................................................................................ 8, 17

*Davis v. FEC,*
  554 U.S. 724 (2008) ............................................................................... 8, 25

*Department of Commerce v. New York,*
  588 U.S. 752 (2019) ................................................................................... 18

*Diversity v. Bernhardt*,
   490 F. Supp. 3d 40 (D.D.C. 2020) ...................................................................... 17

*Does v. Dep't of Just.*,
   No. 25-0325, 2025 U.S. Dist. LEXIS 136624 (D.D.C. July 17, 2025) ................. 17

*Dominguez v. UAL Corp.*,
   666 F.3d 1359 (D.C. Cir. 2012) ........................................................................... 8

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
   431 U.S. 395 (1977) ........................................................................................... 9

*EEOC v. Shell Oil Co.*,
   466 U.S. 54  (1984) ...................................................................................... 22, 23

*Fed. Express Corp. v. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022) ............................................................................ 21

*Greer v. Paulson*,
   505 F.3d 1306 (D.C. Cir. 2007) .............................................................. 7, 10, 18

*Gulf Coast Mar. Supply, Inc. v. United States*,
   867 F.3d 123 (D.C. Cir. 2017) ............................................................................ 6

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) ............................................................................ 5

*Heuer v. Smithsonian Inst.*,
   619 F. Supp. 3d 202 (D.D.C. 2022) ................................................................... 13

*Huron v. Berry*,
   12 F. Supp. 3d 46 (D.D.C. 2013) ....................................................................... 19

*In re Off. of Pers. Mgmt. Data Sec. Breach Litig.*
   ("OPM"), 928 F.3d 42 (D.C. Cir. 2019) ............................................................ 15

*In re Sealed Case*,
   971 F.3d 324 (D.C. Cir. 2020) ........................................................................... 25

*Jenner & Block v. Dep't of Just.*,
   No. 25-0916, 2025 U.S. Dist. LEXIS 99015 (D.D.C. May 23, 2025) ............... 1, 24

*Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*,
   402 F.3d 1249 (D.C. Cir. 2005) .......................................................................... 6

*Kareem v. Haspel*,
   986 F.3d 859 (D.C. Cir. 2021) ............................................................... 15-16, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................................... 5

*Laird v. Tatum*,
   408 U.S. 1 (1972) ............................................................................................. 17

*Little v. Liquid Air Corp.*,
   37 F.3d. 1069 (5th Cir. 1994) ........................................................................... 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................. 5, 8, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................... 7

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ........................................................................ 21

*Ohio Stands Up! v. Dep't of Health and Human Servs.*,
   564 F. Supp. 3d 605 (N.D. Ohio 2021) .......................................................... 20

*Palmieri v. United States*,
   72 F. Supp. 3d 191 (D.D.C. 2014) .................................................................. 11

*Perkins Coie v. Dep't of Just.*,
   No. 25-0716, 2025 U.S. Dist. LEXIS 84475 (D.D.C. May 2, 2025) .............. 1, 24

*Petro-Chem Processing, Inc. v. EPA*,
   866 F.3d 433 (D.C. Cir. 1989) ........................................................................ 19

*Phx. Consulting Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000) ............................................................................ 6

*Sanchez-Mercedes v. Bureau of Prisons*,
   453 F. Supp. 3d 404 (D.D.C. 2020) .............................................................. 5, 6

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ............................................................................................. 8

*Smith v. Maryland*,
   442 U.S. 735 (1979) ................................................................................... 11, 26

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................... 9, 10, 20

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................... 16

*Susman Godfrey LLP v. Exec. Off. of the President*,
   No. 25-1107, 2025 U.S. Dist. LEXIS 123029 (D.D.C. June 27, 2025) ............ 1

*Taylor v. Clark*,
   821 F. Supp. 2d 370 (D.D.C. 2011) .................................................................. 5

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ................................................................. 10, 11, 14

*Truckers United for Safety v. Mead,*
  251 F.3d 183 (D.C. Cir. 2001) ................................................................ 23

*United States v. Bledsoe,*
  630 F. Supp. 3d 1 (D.D.C. 2022) ............................................................ 11

*United States v. Miller,*
  425 U.S. 435 (1976) ................................................................. 11, 14, 26

*United Transp. Union v. Interstate Com. Comm'n,*
  891 F.2d 908 (D.C. Cir. 1989) ................................................................ 18

*Univ. of Cal. Student Ass'n v. Carter,*
  No. 25-0354, 2025 U.S. Dist. LEXIS 30795 at *16 (D.D.C. Feb. 17, 2025) ........................ 17

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President,*
  No. 25-917, 2025 U.S. Dist. LEXIS 144385 (D.D.C. June 26, 2025) ................................... 1

*Wolf v. Regardie,*
  553 A.2d 1213 (D.C. 1989) ................................................................. 12, 13

**Statutes, Regulations and Other Authorities**

5 U.S.C. § 552a ................................................................. 11, 14

29 C.F.R. § 1601.6 ................................................................. 22

29 C.F.R. § 1601.34 ................................................................. 22

44 U.S.C. § 3518 ................................................................. 20

90 Fed Reg. 11781 (March 6, 2025) ................................................................. 1

90 Fed. Reg. 13997 (Mar. 25, 2025) ................................................................. 24

Federal Rule of Civil Procedure 12 ................................................................. 1, 5, 6, 21

Federal Rule of Civil Procedure 56 ................................................................. 1, 6, 7, 21

Defendants, the Equal Employment Opportunity Commission ("EEOC") and its Acting

Chair, Andrea Lucas, respectfully move to dismiss the above-captioned case pursuant to Federal

Rules of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6)

for failure to state a claim for which relief may be granted, or in the alternative, for summary

judgment under Rule 56. This filing also constitutes Defendants' opposition to Plaintiffs' motion

for summary judgment.

## BACKGROUND

I.    **The March 17, 2025, Letters Request Law Firms To Provide Information Pursuant
      To A "Review" By The EEOC.**

On March 6, 2025, President Trump issued Executive Order No. 14230, *Addressing Risks*

*from Perkins Coie LLP*, 90 Fed Reg. 11781 (March 6, 2025).[1] Section 4(a) of the Executive Order

directs the Chair of the EEOC to review the hiring practices of law firms for their compliance with

Title VII: "The Chair of the Equal Employment Opportunity Commission shall review the

---

[1]    Section 4 of Executive Order 14230 is the subject of an injunction issued in a lawsuit
brought by Perkins Coie challenging the Executive Order. *See Perkins Coie v. Dep't of Just.*, Case
No. 25-0716 (BAH), 2025 U.S. Dist. LEXIS 84475 (D.D.C. May 2, 2025). The Court in that case
clarified that the Court's injunction did not impact actions undertaken by the EEOC and
Department of Justice pursuant to Section 4 of the Executive Order regarding entities other than
Perkins Coie. *See* Case No. 25-0716, Minute Order dated May 20, 2025; *see id.*, Motion to Clarify
(ECF No. 186) at 3-4. Similarly, different Executive Orders (EO 14246, EO 14250, and EO
14263) that have a provision referencing Section 4 of Executive Order 14230 also are the subject
of an injunction issued in separate lawsuits brought by Jenner & Block, WilmerHale and Susman
Godfrey. *See Jenner & Block v. Dep't of Just.*, Case No. 25-0916 (JDB), 2025 U.S. Dist. LEXIS
99015 (D.D.C. May 23, 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the
President*, Case No. 25-917 (RJL), 2025 U.S. Dist. LEXIS 144385, at 1 (D.D.C. June 26, 2025);
*Susman Godfrey LLP v. Exec. Off. of the President*, Case No. 25-1107 (LLA), 2025 U.S. Dist.
LEXIS 123029, at *88 (D.D.C. June 27, 2025). The injunction in each of those cases—as it relates
to the review referenced in the March 17, 2025 letters—also was clarified to run only in favor of
those specific firms. Case No. 25-0916, Order (ECF No. 143) at 3; Case No. 25-0917, Order (ECF
No. 121); Case No. 25-1107, Minute Order dated July 29, 2025. All but one of these cases is
currently on appeal.

practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964, including whether large law firms: reserve certain positions, such as summer associate spots, for individuals of preferred races; promote individuals on a discriminatory basis; permit client access on a discriminatory basis; or provide access to events, trainings, or travel on a discriminatory basis." Am. Compl. (ECF No. 18) ¶ 19.  That Executive Order did not direct an "investigation" by the EEOC of the law firms under Title VII but only that the EEOC "review" the hiring practices for their compliance with Title VII.[2]

On March 17, 2025, EEOC announced in a press release that it had "sent letters to 20 law firms requesting information about their diversity, equity and inclusion (DEI) related employment practices" and that "[b]ased on publicly available information, the letters note concerns that some firms' employment practices, including those labeled or framed as DEI, may entail unlawful disparate treatment in terms, conditions, and privileges of employment, or unlawful limiting, segregating, and classifying based on race, sex, or other protected characteristics, in violation of Title VII of the Civil Rights Act of 1964 (Title VII)."  *See* https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei (last visited July 30, 2025); *see also* Am. Compl. (ECF No. 18) ¶ 21.  As it related to law students, the letters sought, among other things, the following information about applicants to the firms' Diversity Fellowship or SEO Fellows Programs: (a) Name, (b) Sex, (c) Race, (d) Phone number,

---

[2]    Section 4(b) of Executive Order 14230 directs "[t]he Attorney General, in coordination with the Chair of the Equal Employment Opportunity Commission and in consultation with State Attorneys General as appropriate, [to] investigate the practices of large law firms as described in subsection (a) of this section who do business with Federal entities for compliance with race-based and sex-based non-discrimination laws and take any additional actions the Attorney General deems appropriate in light of the evidence uncovered." Am. Compl. (ECF No. 18) ¶ 20.  Plaintiffs do not contend that an "investigation" by the Attorney General or State Attorneys General into the law firms' hiring practices requires that a charge of discrimination first be issued by the EEOC.

(e) Email address, (f) Law School, (g) Law School GPA (as of date of application) and (h) whether the person was selected for the program. Am. Compl. (ECF No. 18) ¶¶ 29-31. The letters also sought similar information about law students who applied to be hired by the firms during the specified period. *Id.* ¶ 32.

The letters do not assert that they are being sent pursuant to an "investigation" into the law firms nor do they contain language stating that a response is mandatory. The letters ask for—but do not purport to require—a response by April 15, 2025. Economos Decl. (ECF No. 25-4) ¶ 6 and Ex. E thereto. Thus, these letters are consistent with provisions of the EEOC Compliance Manual permitting informal information gathering by the EEOC. Littlejohn Decl. ¶ 5. Nothing in Title VII prohibits such informal information gathering, including requesting information on a voluntary basis from covered employers.

Plaintiffs themselves do not contend that a response by the law firms was mandatory—they speculate only that the law firms "may *feel* compelled to provide the requested information," not that they were required to do so. Am. Compl. (ECF No. 18) ¶ 9 (emphasis added). And, in their motion for summary judgment, they identify only one firm that according to news reports allegedly provided a substantive response, noting several that allegedly declined to "provide any information to the EEOC." Mot. for Summ. J. (ECF No. 26-1) at 9-10; *id.* at 9 n.4. Plaintiffs thus acknowledge that the firms did not treat compliance as mandatory.

In fact, most firms did not provide any of the requested information. Littlejohn Decl. ¶ 7. And, to the extent any of the requested information was provided, it did not include names or contact information that could connect any of the provided information to any specific individual. Littlejohn Decl. ¶ 10. Thus, contrary to Plaintiffs' speculation, any information that has been provided to the EEOC in response to the March 17, 2025 letters was not personally identifying.

*Id.* ¶ 10. As of this date, the EEOC has not received any recent communication from any law firm advising the EEOC that the firm plans to provide any further response to the requests for information in the March 17, 2025 letters. *Id.* ¶ 9. Thus, the EEOC has not been informed by any law firm to expect to receive any further information in response to the letters and it considers the period for responses closed. *Id.*

## II.   **The Instant Lawsuit**

This action, brought by three individuals proceeding under pseudonym, asserts that the EEOC and its Acting Chair acted in excess of EEOC's authority under Title VII of the Civil Rights Act of 1964 by sending the March 17, 2025, letters. The three "Doe" plaintiffs assert that they are law students who "have applied to or worked at one or more of the twenty law firms" and that the letters to the law firms sought information about applicants and employees, including their name, sex, race, contact information, academic performance, and compensation. Am. Compl. (ECF No. 18) ¶ 8. Plaintiffs provided their information to the law firms voluntarily as one Plaintiff has expressly acknowledged. Decl. (ECF No. 25-5) ¶ 6. None contends otherwise.

Plaintiffs speculate that the law firms "may feel compelled to provide the requested information" to the EEOC and further speculate that, if the law firms decide to provide the information, "the government may use their data improperly to target them or their families from any activity or speech it wishes to stifle." Am. Compl. (ECF No. 18) ¶¶ 9, 72. Plaintiffs allege that they "expected that their personal information would be kept confidential to the firm at which they worked or to which they applied unless the firms were legally required to disclose it." *Id.* ¶ 8. Plaintiffs, however, do not allege that the law firms agreed to maintain their information in confidence, that there is any statute requiring that the law firms maintain the information in confidence, or that, by agreement with the law firms, Plaintiffs retained any property interest in their information. Plaintiffs also do not affirmatively allege or attest in their supporting

declarations that they themselves kept the information at issue confidential by, for instance, not disclosing it in Linked-In profiles or through other social media.[3]

Plaintiffs seek (1) a declaration that Defendants acted *ultra vires* in sending the letters, (2) an injunction prohibiting the EEOC from investigating any law firm "through means that do not satisfy the requirements of conducting an investigation under Title VII's EEOC charge process," (3) an order directing the EEOC to withdraw the letters, (4) and an order directing the EEOC to return any information collected pursuant to the letters and to delete the information from its databases. Am. Comp. (ECF No. 18) ¶ 82; *id.* at 31-32.

## LEGAL STANDARDS

A motion to dismiss for lack of standing is properly considered under Rule 12(b)(1), as "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Established law requires the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (cleaned up). Federal courts are courts of limited jurisdiction and the law "presume[s]" that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020). "The Court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally,

---

[3]    Doe 1 acknowledges that "I was a 2023 SEO Law Fellow at one of the firms named in the EEOC's letters" and "the fact of my participation in the program is public knowledge." Decl. (ECF No. 25-5) ¶ 7. Doe 1 asserts that "my compensation and subsequent history with the firm are not public. *Id.* How a law firm sets compensation is information belonging to the law firm, not the individual employee. And it is hard to understand how any plaintiff can contend that their employment at a large law firm is private information when their employment would have been known to other employees of the firm and likely included on resumes and social media.

granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Id.* (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).

When, as here, a defendant makes both a facial challenge to the Court's jurisdiction and also contends that jurisdiction is lacking as a matter of fact, a court may consider materials outside the pleadings in determining whether it has jurisdiction. *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (explaining facial versus factual standing challenges). "If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim." *Sanchez-Mercedes*, 453 F. Supp. 3d at 414. "[D]ismissal for want of subject-matter jurisdiction can only be without prejudice[.]" *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020).

A complaint must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The Court must "take as true all well-pled factual allegations within [a plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

In the event the Court determines that any of the documentary evidence accompanying the instant motion is not properly considered under Rule 12(b)(1) or not the type of extrinsic material that can be considered under a Rule 12(b)(6) standard, Defendants are alternatively moving under Rule 56. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether there exists a genuine issue of material fact, the Court must view all facts, as well as reasonable inferences to be drawn from them, in a light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255.

The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Indeed, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative," summary judgment should be granted. *Id.* at 249-50 (citations omitted). Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Hearsay "counts for nothing" at the summary judgment stage. *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007).

## ARGUMENT

**I.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs Have Failed To Plead Facts To Establish Standing.**

Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). Importantly, standing is "not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted). "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (internal quotation marks omitted).

To establish standing, Plaintiffs must demonstrate that they suffered an injury-in-fact, specifically an injury that is "concrete, particularized, and actual or imminent;" the injury is "fairly traceable to the challenged action;" it is "likely," not speculative; and the injury is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted); *Lujan,* 504 U.S. at 560-61. Plaintiffs bear the burden of establishing each element. *Lujan*, 504 U.S. at 561. And, when plaintiffs purport to represent a putative class as the Doe Plaintiffs in this case do, the standing analysis necessarily focuses on whether the putative class representatives have standing to sue in their own right. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"). Moreover, "once a plaintiff's individual claims fail, he cannot be an adequate representative for class claims under

Rule 23." *Brewer v. Holder*, Civ. A. No. 08-1747 (BJR), 2013 WL 12399112, at *4 (D.D.C. Dec. 16, 2013) (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

It is well-established that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Thus, even were the Court to accept Plaintiffs' theory that the EEOC's "sending" of the March 17, 2025, letters constituted *ultra vires* "investigative" activity for purposes of the jurisdictional analysis, *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) ("in reviewing the standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims"), the sending of those letters alone would not establish Plaintiffs' standing. Plaintiffs instead must demonstrate that the "sending" of the letters—which were directed to third parties that are not defendants in this case—caused concrete harm to Plaintiffs, that is, harm that is "real" and not "abstract." *Id.* at 340.

Plaintiffs assert that they have standing on two grounds. First, they argue that they have experienced concrete harm based on their speculation that the EEOC collected applicant or employee information from the law firms that identifies them personally. Mot. for Summ. J. (ECF No. 26-1) at 25 (referring to "harm from an unauthorized disclosure of personal information"). Second, Plaintiffs allegedly fear potential future harm to them based on speculation about the possibility they might be "target[ed]" by the government as a result of any personally identifying information collected by the EEOC. *Id.* at 25; Am. Compl. (ECF No. 18) ¶ 72.

As already addressed above, the premise that the EEOC has collected personally identifying information in response to the March 17, 2025, letters is incorrect. Littlejohn Decl. ¶ 10. To the extent Plaintiffs speculate otherwise, those contentions are based entirely on conclusory allegations and hearsay. The amended complaint speculates, based on an April 10,

2025, *Bloomberg Law* article, that "[i]t has been reported that the firms intend to respond to the letters, including employee- and applicant-specific information." Am. Compl. (ECF No. 18) ¶ 45. And, in their motion for summary judgment, they cite a *Bloomberg Law* article to contend that one firm provided information that Plaintiffs believe may have included personally identifying information. Mot. for Summ. J. (ECF No. 26-1) at 9. But conclusory allegations are insufficient for standing purposes, *Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023), and news articles are not competent evidence to raise a genuine dispute that can defeat summary judgment. *Greer*, 505 F.3d at 1315 (hearsay "counts for nothing" at the summary judgment stage).

Based on the accompanying declaration, it is undisputed that the EEOC has not collected personally identifying information from law firms based on the March 17, 2025, letters. Littlejohn Decl. ¶ 10. Thus, Plaintiffs have at most alleged "a bare procedural violation, divorced from any concrete harm," which cannot "satisfy the injury-in-fact requirement." *Spokeo*, 578 U.S. at 341. For that threshold reason, and the other reasons addressed below, neither argument advanced by Plaintiffs supports their standing to sue. Accordingly, this action should be dismissed for lack of jurisdiction.

### A.    Plaintiffs Have Not Established Any Concrete Harm Resulting From The March 17, 2025, Letters.

To have Article III standing to sue in federal court, Plaintiffs must demonstrate, among other things, that they suffered a concrete harm, without which standing is lacking. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms" that bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 417, 425.

Plaintiffs allege standing based solely on an "intangible harm" related to an alleged intrusion on their privacy, but their argument in that regard is limited. They have not named any law firm as a defendant and have not asserted that the law firms violated their privacy to the extent the firms responded to the March 17, 2025, letters. Indeed, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *Smith v. Maryland*, 442 U.S. 735, 744-45 (1979), "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443 (1976); *see also Palmieri v. United States*, 72 F. Supp. 3d 191, 209 (D.D.C. 2014) ("Palmieri shared his Facebook information with 'friends,' and hence he had no privacy expectation in that information because those 'friends' were free to use the information however they wanted—including sharing it with the Government."); *United States v. Bledsoe*, 630 F. Supp. 3d 1, 12-14 (D.D.C. 2022) (discussing the lack of a privacy interest in information voluntarily provided to third parties under the "long-standing third-party doctrine").

Plaintiffs also have not alleged that the law firms had agreed to maintain their information in confidence or were required by statute to do so. Plaintiffs, moreover, have not alleged that the EEOC has publicly disclosed any of the information it has collected or shared it with any other agency. Thus, Plaintiffs have not alleged that the Privacy Act, 5 U.S.C. § 552a, has been violated.

Plaintiffs' standing theory instead is based on speculation regarding the EEOC's alleged *collection* of their information through what they characterize as *ultra vires* "investigative" activity. As the requisite "historical or common-law analogue," *TransUnion*, 594 U.S. at 424, Plaintiffs rely solely on the common law tort of intrusion upon seclusion. Mot. for Summ. J. (ECF No. 26-1) at 22. That analogy fails as discussed below and, with it, so too does Plaintiffs' attempt to establish standing to bring an *ultra vires* claim.

1.    Plaintiffs Have Failed To Establish Concrete Harm Based On The EEOC's
Collection Of Information In Connection With The March 17, 2025,
Letters.

a.    EEOC's Collection Of Information Is Not Analogous To The Tort
Of Intrusion Upon Seclusion.

The tort of intrusion upon seclusion is a misplaced analogy for multiple reasons.  First,

neither the type of information collected by the EEOC nor the manner in which it was collected

can be analogized to that tort.  Examples of actionable intrusion include "peeping through windows

or into some other locations in which a plaintiff has chosen to seclude himself; opening personal

mail; eavesdropping on private conversations; entering a plaintiff's home without permission or

searching his or her belongings; examining a plaintiff's private bank account; or other invasions

of that nature." *Wolf v. Regardie*, 553 A.2d 1213, 1217-18 (D.C. 1989).  But here, there is no

alleged intrusion of Plaintiffs' person, residence, property, or private accounts maintained for them

by a third party, nor was the alleged intrusion accomplished through stealth, fraud or equivalent

conduct that would be "highly offensive to a reasonable person."  *Id*. at 1217, 1219.

Although Plaintiffs contend that the EEOC lacked authority to send the March 17, 2025,

letters to the law firms, they do not allege that the EEOC attempted to use stealth or fraud to obtain

responses.  The EEOC announced in a press release that it was seeking the information from the

law firms following an Executive Order directing such a review and included a link to the letters

in the press release.  The letters, moreover, do not use the term "investigation," and the information

sought is consistent with the EEOC's mandate to ensure compliance with anti-discrimination laws.

For their part, the law firms that received the letters are sophisticated parties capable of

assessing what, if any, legal obligation they had to respond.  Not all complied and instead their

responses varied as the law firms deemed appropriate.  Littlejohn Decl. ¶ 7.  Thus, to the extent

the EEOC obtained information from any law firm in response to the March 17, 2025, letters, it

was obtained from the law firms openly, at arms-length, and based on each law firm's voluntary determination as to whether and to what extent to comply.  Moreover, the alleged intrusion here is into records of commercial entities for information that Plaintiffs voluntarily shared with those entities or that those entities generated themselves in the ordinary course of their business (such as information regarding compensation and job titles).  The tort of intrusion upon seclusion is inapplicable to such third-party information gathering efforts.  *Wolf*, 553 A.2d at 1218 ("Gathering information about appellant from third parties, 'even if pursued using subterfuge and fraud, cannot constitute . . . an intrusion upon [appellant's] solitude or seclusion.'").

The information at issue also is not of a highly sensitive nature but is of the type—such as race, sex, academic achievement, and employment record—that is often widely shared on social media.  But even were the Court to consider the applicant-specific or employee-specific information sought in the letters to be sufficiently sensitive, none of the information actually collected by the EEOC was personally identifying.  Littlejohn Decl. ¶ 10.  To the extent information has been provided in response to the March 17, 2025, letters, it did not include individual names, phone numbers, email addresses or other contact information.  *Id.*  Thus, the collected information could not plausibly be linked to any specific individual and, accordingly, could not have resulted in concrete harm to Plaintiffs' privacy interests.  *See, e.g.*, *Heuer v. Smithsonian Inst.*, 619 F. Supp. 3d 202, 210 (D.D.C. 2022) ("Because the first four digits of Plaintiff's credit card do not reflect any sensitive information specific to him, but rather information that merchants are otherwise permitted to print on receipts, that disclosure alone appears less likely to have increased the risk of any 'real harm' to Plaintiff" that could establish standing).

For the reasons above, Plaintiffs' attempt to analogize the situation here to the tort of intrusion upon seclusion fails. Because Plaintiffs have not identified any other "historical or common-law analogue" to demonstrate particularized, concrete harm, *TransUnion,* 594 U.S. at 424, they have failed to establish that element of standing.

b.   Plaintiffs' Case Authority Is Inapposite.

The cases cited by Plaintiffs to support their alleged standing are distinguishable because they involve sensitive personal information (such as social security numbers and bank information) within agency systems of records protected pursuant to the Privacy Act, 5 U.S.C. § 552a. Those cases do not involve the situation here, which concerns the government's alleged collection from private law firms of information that the Plaintiffs voluntarily shared with those firms. *See Miller*, 425 U.S. at 443. Unlike federal agencies, private law firms are not subject to the Privacy Act, nor have Plaintiffs identified any equivalent statute that would protect their information to the extent maintained as part of the law firms' business records. Further, no personally identified information was provided by the law firms in response to the March 17, 2025, letters.

In the context of personal information maintained by the government and protected by the Privacy Act, courts have analogized to the tort of intrusion upon seclusion to find standing when a plaintiff alleges unauthorized disclosure or access in violation of that Act. But those decisions are dependent on the protections afforded by the Privacy Act to information maintained in agency systems of records. Courts have reasoned that the Privacy Act "created a new sphere in which individuals not only expect privacy, but have a right to it—i.e., a sphere of seclusion" for information maintained by a government agency, and that "[a]n intrusion upon that sphere—even if the sphere literally encompasses only one row of millions in a dataset—amounts to an injury similar to the intrusion upon other private spheres, such as one's home" that can be analogized to the tort of intrusion upon seclusion. *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Labor*,

Civ. A. No. 25-0339 (JDB), 2025 U.S. Dist. LEXIS 72516, at *24 (D.D.C. Apr. 16, 2025); *see also All. for Retired Ams. v. Bessent*, Civ. A. No. 25-0313 (CKK), 2025 U.S. Dist. LEXIS 42019, at *46 (D.D.C. Mar. 7, 2025) (the disclosure of personal taxpayer information was a sufficient injury-in-fact to support standing based on the close relationship with the common law tort of intrusion upon seclusion because "[i]t is entirely reasonable for [plaintiffs] to rely on the explicit statutory protections provided by the Privacy Act and the Internal Revenue Code" to protect that information from unauthorized disclosure).

But this reasoning is of no moment here when the "sphere" at issue—commercial entities' business records that are not within EEOC's possession—is not covered by the Privacy Act or any other equivalent statute. The cited cases also are inapposite because they involve alleged unauthorized access to sensitive personally identifying information such as social security numbers and personal financial information linked to specific individuals. *Am. Fed'n of Lab.*, 2025 U.S. Dist. LEXIS 72516, at *23 (social security numbers linked to individual names); *All. for Retired Ams*, 2025 U.S. Dist. LEXIS 42019, at *46-47 (personal financial information such as bank account numbers). Here, the specific information that Plaintiffs allege to be sensitive—personal phone numbers and email addresses—Mot. for Summ. J. (ECF No. 26-1) at 24—has not been provided to the EEOC in response to the March 17, 2025, letters. Littlejohn Decl. ¶ 10.

    2.    Plaintiffs' Assertions Regarding Potential Future Injury Based on a Fear of a Future Government Misuse of Their Information Are Too Speculative To Establish Concrete Harm.

To the extent Plaintiffs base their standing on speculation about potential future injury, that likewise is insufficient. An "allegation of future injury" to support the injury-in-fact element of standing "passes Article III muster only if it is certainly impending, or there is a substantial risk that the harm will occur." *In re Off. of Pers. Mgmt. Data Sec. Breach Litig. ("OPM")*, 928 F.3d 42, 54 (D.C. Cir. 2019) (quotation marks omitted); *see also Kareem v. Haspel*, 986 F.3d 859, 865

(D.C. Cir. 2021) ("Because [plaintiff's] complaint seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." (internal quotation marks omitted)).  In addition to being "certainly impending," *Kareem*, 986 F.3d at 865 (internal quotation marks omitted), allegations of future injury must be "particular and concrete."  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998).

Plaintiffs here do not allege a "certainly impending" future injury.  *Kareem*, 986 F.3d at 865.  At best, Plaintiffs speculate about the potential for future injury based on conclusory allegations that are insufficient.  *See Air Excursions*, 66 F.4th at 277 (conclusory statements are insufficient to establish standing).  In assessing whether a complaint has adequately pled standing, the Court must set "mere conclusory statements aside" and determine whether the pleading contains "sufficient factual matter, accepted as true, to support an inference of standing" that is plausible on its face.'"  *Id.* (internal quotation marks omitted).  This "requires more than a sheer possibility that the plaintiff has standing to sue."  *Id*. at 278 (internal quotation marks omitted).

Plaintiffs speculate that, to the extent any law firm decided to provide the information requested by the March 17, 2025, letters, "the government may use their data improperly to target them or their families from any activity or speech it wishes to stifle."  Am. Compl. (ECF No. 18) ¶¶ 9, 72.  But they have failed to plead any facts sufficient to raise a plausible inference that these speculative fears are likely to materialize.  Their fear is rendered even more implausible given that the EEOC has not collected any personally identifying information in response to the letters and is not expecting any further responses to the letters.  Littlejohn Decl. ¶¶ 9-10.  Thus, there is no plausible basis for Plaintiffs' speculation that they may be targeted in the future or that the information collected by the EEOC would somehow be misused in the future to cause them harm.

Speculation about potential future harm, in any event, is insufficient to establish standing. *See, e.g., Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any speculation of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (emphasis omitted)); *Does v. Dep't of Just.*, Civ. A. No. 25-0325 (JMC), 2025 U.S. Dist. LEXIS 136624, at *35 (D.D.C. July 17, 2025) (finding no standing based on a fear of a future disclosure because "[t]here is nothing in Plaintiffs' amended complaint or the record before the Court—taken separately or considered together—from which the Court can reasonably conclude that Defendants have any plan to release Plaintiffs' identities to the public"); *Ctr. for Bio. Diversity v. Bernhardt*, 490 F. Supp. 3d 40, 51-52 (D.D.C. 2020) (standing cannot rest on "a series of subsequent events . . . which are still purely hypothetical"); *Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 U.S. Dist. LEXIS 30795 at *16 (D.D.C. Feb. 17, 2025) (concluding that the plaintiffs had provided "no evidence, beyond sheer speculation, that would allow the Court to infer that [the agency or other government personnel] will misuse or further disseminate this information," and noting that "'the courts must presume' that the government will exercise its powers 'responsibly' and with 'due regard' to affected individuals").

### B.   Plaintiffs Have Failed To Establish The Requisite Causation.

To establish standing, Plaintiffs also must demonstrate that their alleged injury is "fairly traceable to the challenged action." *Clapper*, 568 U.S. at 409. Plaintiffs, however, do not allege that they were harmed by the EEOC's sending of the March 17, 2025, letters to the twenty law firms, but rather, any such alleged harm would exist only to the extent any law firm made the voluntary decision to produce information in response to the letters, and then only to the extent

that the law firms decided (if at all) to include personally-identifiable information in their responses (and none did, as already established above).  *United Transp. Union v. Interstate Com. Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]")

As Plaintiffs acknowledge, the law firms did not respond uniformly to the letters.  Mot. for Summ. J. (ECF No. 26-1) at 9; *id*. at 9 n.4 (noting that "[i]t has been reported that the lawyer representing [five firms] informed Texas Attorney General Paxton that the five firms did not provide any information to the EEOC").  Indeed, it is undisputed that most failed to provide any of the requested information.  Littlejohn Decl. ¶ 7.  Plaintiffs speculate that the law firms "may" have felt "compelled to provide the requested information" (Am. Compl. (ECF No. 18) ¶ 9), but the letters themselves do not state that compliance is mandatory.  Nor is such an inference plausibly supported by any specific allegation in the amended complaint or by any competent evidence offered in support of Plaintiffs' motion for summary judgment.  Plaintiffs' assertions are based entirely on speculation and hearsay, neither of which can raise a genuine dispute on this issue. *Greer*, 505 F.3d at 1315.

Ultimately, the varying nature of the law firms' responses to the letters demonstrates that the letters had no "predictable effect . . . on the decisions of third parties" that could warrant deviating from the general rule declining to find standing based "'on speculation about the decisions of independent actors.'" *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019).  Thus, even were this Court to determine that Plaintiffs have adequately established an injury-in-fact, any such alleged harm would be the result of the independent decisions of the law

firms that received the letters.  To the extent those law firms chose to respond to those letters—letters that allegedly exceeded the EEOC's authority to issue—then that voluntary decision "sever[ed] the causal link necessary to establish standing." *See Huron v. Berry,* 12 F. Supp. 3d 46, 52 (D.D.C. 2013) (citing *Petro-Chem Processing, Inc. v. EPA,* 866 F.2d 433, 438 (D.C. Cir. 1989); *Grocery Mfrs. Ass'n v. EPA,* 693 F.3d 169, 177 (D.C. Cir. 2012)).

The D.C. Circuit's ruling in *Petro-Chem* is instructive.  There, a trade organization claimed it had standing to challenge an EPA regulation that authorized hazardous waste disposal in geologic repositories because it placed members in a "lose-lose" situation.  Although the regulations did not require the use of such repositories, the plaintiff alleged that its members were being placed in a position of having to choose between two competing economic interests:  if they chose not to use geologic repositories for hazardous waste disposal, they would lose potential business, but if they chose to use geologic repositories, they would face potential liability from leaking repositories.  *Petro-Chem,* 866 F.2d at 438.  The D.C. Circuit concluded that the trade organization lacked standing to sue even though the regulation placed its members in the position of having to make this choice.  *Id.* ("It is of no moment for the inquiry at hand that they may be 'forced' by competitive pressures to choose" between these options).

Here, Plaintiffs' theory of standing is one step removed because they were not the recipients of the letters.  The recipients instead were law firms that are not before the Court and that had options in terms of whether and how to respond to the letters.  Indeed, even if the Court were to accept Plaintiffs' unsupported assumption that some law firms felt "compelled" to provide some response, any such firm still would have had the option to withhold personal identifiers from any response that was provided.  *See Citizens for Responsibility & Ethics v. Dep't of the Treas.,* 21 F. Supp. 3d 25, 34-35 (D.D.C. 2014) (determining that plaintiff failed to establish standing

when theory of causation depended on independent choices of third parties).  To the extent Plaintiffs claim to have been harmed by any information produced by the law firms in response to the March 17, 2025, letters, therefore, any such harm was caused by the law firms' voluntary choice.  *See id*; *see also Grocery Mfrs*., 693 F.3d at 177.

### C.    Plaintiffs Have No Standing to Assert an *Ultra Vires* Claim Based on the Paperwork Reduction Act.

To the extent Plaintiffs base their *ultra vires* claim on the Paperwork Reduction Act, they lack standing for reasons in addition to those set forth above.  As an initial matter, although couched as an *ultra vires* claim, Plaintiffs allege a "violation" of that Act, not that the EEOC exceeded its statutory authority under that Act.  Am. Compl. (ECF No. 18) ¶¶ 62, 86.  Plaintiffs acknowledge that that Act confers no private right of action, *id*., and thus they have no standing to assert any claim based on that Act.  *See generally Ohio Stands Up! v. Dep't of Health and Human Servs*., 564 F. Supp. 3d 605, 613-14 (N.D. Ohio 2021) (citing cases).  Further, Plaintiffs' theory that the EEOC's "sending" of the March 17, 2025, letters constituted *ultra vires* "investigative" activity also would render the Paperwork Reduction Act inapplicable were the Court to accept that theory.  *See* 44 U.S.C. § 3518(c)(1)(B)(ii) (stating that the Act is inapplicable to "an administrative action or investigation involving an agency against specific individuals or entities").

Plaintiffs, moreover, allege that the procedures of that Act were not followed but acknowledge that those procedures are for the benefit of the recipient of the information request, specifically, by affording the recipient a defense to administrative enforcement.  Mot. for Summ. J. (ECF No. 26-1) at 24; *id*. at 24 n.6. Plaintiffs, who were not the recipients of the March 17, 2025, letters, do not plausibly allege how they have been harmed by the alleged failure of the EEOC to follow the procedures of that Act when it was the law firms' prerogative to determine whether to raise any defense afforded by that Act.  *See Spokeo*, 578 U.S. at 341.

Thus, Plaintiffs have not alleged either a concrete injury resulting from an alleged violation of the Paperwork Reduction Act or that their alleged injury was causally connected to the alleged violation of the Act. Accordingly, they have no standing to assert an *ultra vires* claim based on the Paperwork Reduction Act.

## II.    Plaintiffs Have Failed To State A Claim for *Ultra Vires* Review

Plaintiffs' amended complaint asserts as its sole claim that the EEOC acted *ultra vires* in "sending" the March 17, 2025, letters on the basis that the EEOC lacked authority under Title VII to issue those letters.[4] For reasons stated below, under Rule 12(b)(6), Plaintiffs have failed to state a claim for *ultra vires* review. Alternatively, Defendants are entitled to summary judgment under Rule 56.

"*Ultra vires* review is . . . only available in extraordinary circumstances." *DCH Reg. Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (noting "extremely limited scope" and "extraordinarily narrow" nature of *ultra vires* claims). Indeed, the bar for asserting an *ultra vires* claim is high: the Plaintiffs must meet a heightened standard "confined to 'extreme'" errors. *See Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 763-64 (D.C. Cir. 2022). Accordingly, a claim based on *ultra vires* review requires a violation of a "specific prohibition in the statute that is clear and mandatory," a violation that was "obviously beyond the terms of the statute," or action that was "far outside the scope of the task that Congress gave it." *N. Am. Butterfly Ass'n*, 977 F.3d at 1263 (citations omitted). As a result, *ultra vires* claims "rarely succeed." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).

---

[4]    As already addressed, Plaintiffs have not alleged that the Paperwork Reduction Act placed limits on the EEOC's authority to seek information from employers covered by Title VII, and thus have not alleged *ultra vires* review based on the Paperwork Reduction Act. They have pled that the EEOC violated that Act but acknowledge that there is no private cause of action under that Act. Accordingly, for this reason, and the reasons already stated, Plaintiffs' *ultra vires* claim should be dismissed to the extent it is based on the Paperwork Reduction Act.

The premise of Plaintiffs' claim for *ultra vires* review is that Title VII expressly precludes the EEOC from issuing letters to covered employers voluntarily seeking information about their hiring practices before an "investigation" has been commenced by the issuance of a charge, including a Commissioner's Charge. But there is no such prohibition under Title VII.

EEOC does not dispute that an "investigation" under section 2000e-8(a) is commenced upon the filing of a charge of discrimination and that its ability to compel the production of information pursuant to a subpoena is "tied to charges filed with the Commission." *EEOC v. Shell Oil Co*., 466 U.S. 54, 64 (1984). But, contrary to Plaintiffs' characterization, this case is not about a request for information made pursuant to an "investigation." What is at issue are letters—not subpoenas—sent by the EEOC to twenty law firms for information about each firm's employment practices, including those related to diversity, equity, and inclusion. The letters do not state that they are issued pursuant to an "investigation," but rather as part of a "review" of the firms' compliance with Title VII. Nothing in that statute precludes the EEOC from requesting that businesses voluntarily provide information to the EEOC about their employment practices. *See* 29 C.F.R. § 1601.6(a) ("The Commission shall receive information concerning alleged violations of title VII . . . from any person."); 29 C.F.R. § 1601.34 ("These rules and regulations shall be liberally construed to effectuate the purpose and provisions of title VII[.]").

Indeed, informal information gathering is a recognized step under the EEOC's Compliance Manual for evaluating employer compliance with Title VII, including in assessing whether a Commissioner's Charge should issue. *See* EEOC's Comp. Man. (Ex. 1 to Littlejohn Decl.) at § 8.1 ("Respondents may be identified . . . in the absence of an individual charge or when the bases/issues to be investigated are not adequately covered by a pending individual charge."); *id*. at § 8.2(b) ("An important part of the enforcement process lies in determining in advance which

establishments most need to be investigated."); *id.* at § 14.2 ("There are occasions when compliance activity before . . . service of a charge is appropriate . . . . [T]his may either be for enforcement reasons or because early settlement is clearly appropriate."); *id.* at § 14.2(d)(1) (permitting witness interviews before charges have been served to obtain evidence indicating possible legal violations, including from witnesses "who may have key information or may be able to verify key information (an incident described or key records available)," and witnesses "who are custodians of records or who may be able to provide essential information on actual policies, recordkeeping practices, location of records, etc.."). The Compliance Manual distinguishes between such informal activity and an "investigation." *See* EEOC Comp. Man. § 8.6(b)(2)(ii) (emphasizing that a "voluntary assistance action is *not* an investigation under Title VII").

The cases cited by Plaintiffs thus are misplaced. In *Truckers United for Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001), an Office of Inspector General obtained a search warrant to seize documents from a private business after the business refused to voluntarily cooperate with a compliance review. The Court held that the compelled seizure of documents was *ultra vires* because the Inspector General was not authorized to conduct such an investigation. *Id.* at 190. Similarly, at issue in *Shell Oil* was the "judicial enforcement of an administrative subpoena of personnel records." *Shell Oil Co.*, 466 U.S. at 64. Neither case determined that an agency acted *ultra vires* by requesting that a business produce information voluntarily and without compulsory process.

The rulings in *Perkins Coie* and *Jenner & Block,* cited by Plaintiffs in their motion, also do not support Plaintiffs' *ultra vires* theory. Those cases concerned allegations that two Executive Orders—by virtue of specifying these two law firms by name, Perkins Coie (Executive Order 14230) and Jenner & Block (Executive Order 14246)—constituted retaliation against those firms

in violation of the First Amendment and other constitutional provisions.[5]  Although the decisions

in those cases refer to the March 17, 2025, letters to the two law firms as "retaliation" for the law

firms' protected speech,[6] neither case considered the particular issue here—which is whether the

sending of the March 17, 2025, letters alone, and unaccompanied by a subpoena or other

compulsory process, was *ultra vires*, that is, that the sending of the letters violated a "specific

prohibition in the statute that is clear and mandatory," was "obviously beyond the terms of the

statute," or was "far outside the scope of the task that Congress gave it."  *N. Am. Butterfly Ass'n*,

977 F.3d at 1263.

Because nothing in Title VII prohibits informal information gathering by the EEOC

regarding the employment practices of covered entities, Plaintiffs' *ultra vires* claim should be

dismissed or, alternatively, summary judgment granted in favor of Defendants.

## III.    Plaintiffs Are Not Entitled To Declaratory Relief or An Injunction.

Plaintiffs also seek summary judgment on the relief they seek, claiming they are entitled to

a declaratory judgment and a permanent injunction.  Plaintiffs, however, are not entitled to either

---

[5]      Section 4 of Executive Order 14246—the Executive Order at issue in *Jenner & Block*—
states:  "Nothing in this order shall be construed to limit the action authorized by section 4 of
Executive Order 14230 of March 6, 2025 (Addressing Risks from Perkins Coie LLP)."  *See* 90
Fed. Reg. 13997 (Mar. 25, 2025).

[6]      *See Jenner & Block*, 2025 U.S. Dist. LEXIS 99015, at *60 ("But the President may not
evade the 'extensive regulation' governing EEOC proceedings, . . . and single out Jenner for
investigation in retaliation for its speech."); *Perkins Coie,* 2025 U.S. Dist. LEXIS 84475, at *108-
09 ("By not following its own procedures, the EEOC has undermined the legitimacy of its own
investigation, revealing this investigation of plaintiff to be a product of the retaliation ordered by
EO 14230 rather than any legitimate investigative activity.").  In *Perkins Coie*, the Court stated
that "Section 4 [of Executive Order 14230], by implication, directs the EEOC to investigate
plaintiff, as the government has conceded."  *Perkins Coie*, 2025 U.S. Dist. LEXIS 84475, at 106.
But the concession by the government referenced by the Court in support of that statement was
that "Section 4 directs 'review [of] whether Perkins Coie and like employers are violating the civil
rights laws.'"  *Id.*  The EEOC respectfully submits that the government had not conceded that a
formal investigation had been commenced.

remedy because they do not have standing to assert an *ultra vires* claim or to seek declaratory or injunctive relief as a remedy, *Davis*, 554 U.S. at 734 (standing is "not dispensed in gross"), and they lack a viable claim for which relief can be granted in any event. As established above, the EEOC has not collected any personally identifying information in connection with the March 17, 2025, letters, and thus the premise of Plaintiffs' lawsuit and request for declaratory or injunctive relief is fundamentally flawed. The injunction requested also is overly broad, as a class has not been certified, and the requested injunction would require the return or destruction of all information collected by the EEOC even if not personally identifying to anyone, let alone to the Plaintiffs. Pls. Proposed Order (ECF No. 26-3). Plaintiffs have identified no basis for such expansive relief. *ALPO Petfoods, Inc. v. Ralston Purina Co*., 913 F.2d 958, 972 (D.C. Cir. 1990) ("The law requires that courts closely tailor injunctions to the harm that they address.").

Moreover, Plaintiffs have failed to affirmatively plead that they have not themselves disclosed their email addresses, phone numbers, information about their race or sex, academic performance and work history that they claim to be at issue. Plaintiffs also are proceeding anonymously and thereby are precluding the government from testing their allegations of harm by assessing what information might already be available publicly about the Plaintiffs.[7] Thus, Plaintiffs have not presented a record by which the Court could grant them summary judgment on any basis, let alone grant summary judgment on their requested injunction.

---

[7]     The permission the Court granted Plaintiffs to proceed under pseudonyms does not entitle Plaintiffs to litigate against the government anonymously through judgment. *See* Order (ECF No. 16) at 7 (concluding that permitting Plaintiffs to proceed under pseudonyms "does not raise a risk of unfairness to the defendant *at this stage in litigation*") (emphasis added). Thus, in the event the Court denies Defendants' dispositive motion, Plaintiffs should be ordered to identify themselves to the government to allow the government to fairly test their privacy-based allegations. *See In re Sealed Case*, 971 F.3d 324, 325-26 (D.C. Cir. 2020) ("The presumption of openness is both 'customary and constitutionally-embedded[.]'" (quoting *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019))).

Accordingly, for the reasons stated above, the factors to be considered for assessing whether permanent injunctive relief is warranted necessarily weigh against granting such relief. Plaintiffs have not demonstrated any injury, let alone an "irreparable one"; Plaintiffs in any event lack "a reasonable expectation of privacy" in information they have voluntarily provided to third parties, *Miller*, 425 U.S. at 443; *Smith*, 442 U.S. at 744-45; and the public interest would not be served by the overbroad injunction requested by Plaintiffs. For all these reasons, Plaintiffs' request for summary judgment as to their requested remedies should be denied.

## CONCLUSION

For these reasons, Defendants respectfully requests that the Court grant their motion to dismiss or alternatively grant their motion for summary judgment, and deny Plaintiffs' motion.

Dated: July 31, 2025                    Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ Jeremy S. Simon_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2528

*Attorneys for the United States of America*